# Pollock *versus* Ray.

1. Claims against the estates of decedents, resting on mere oral testimony of declarations and admissions of the decedent are very dangerous, and not to be favored by the courts.

2. P. brought her action in 1873 to recover for services rendered decedent, with whom she alleged she had a special contract, by which payment for her services was postponed until his death.   P. left the house of decedent in 1861 and the latter died in 1872.   The declarations of decedent on which the alleged contract was founded, in effect, were, "we intend to do as well by her as by our own child;" "if she lived after him he would do well by her at his death;" "he intended to do well by her, and at his death would make her as good as an heir."   P. did not agree to remain or stay.   *Held*, that the evidence of a special contract was entirely insufficient, and the question ought not to have been submitted to the jury.

3. The court below admitted evidence of the amount of the estate of the decedent at the time of his death, and instructed the jury that "if the decedent promised to do as well by her as by his own child, his meaning might be that he designed to put her on an equality with his own.   In this view we have received evidence of the value of the decedent's property, and leave it to you to say what plaintiff should have, regarding what decedent s child might have received as the only heir of the father, if he had survived him."   *Held*, that the admission of this testimony was improper and the instruction erroneous.

[Pollock *v.* Ray.]

November 12th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas, of *Washington county:* Of October and November Term 1877, No. 18.

Assumpsit by William Ray and Elizabeth, his wife, in right of the wife, against Sarah A. Pollock, executrix of James Pollock, deceased, to recover for services rendered the decedent in his lifetime by Mrs. Ray as a domestic servant and housekeeper.

The action was brought on the 26th of June 1873, and came on for trial in 1876.

The *narr.* averred that on the——day of May 1858, James Pollock, the defendant's testator, agreed with the said Elizabeth Ray, that in consideration of her services then rendered and to be rendered by her to the said decedent, he would provide for her at his death out of his estate, the same as he would for his own son ; meaning thereby, that she, the said plaintiff, should take and receive out of his estate a child's share for the services aforesaid. Yet the said decedent, in violation of his said agreement, made no provision whatever for plaintiff; and the defendant in this suit, his executrix, since that time has neglected and refused to pay or compensate the said plaintiff in any way for said services according to the promise of her said testator, although the compensation of said plaintiff under the aforesaid contract would and did amount to the sum of $10,400.

Defendant pleaded non-assumpsit and the Statute of Limitations.

At the trial, before Acheson, P. J., it appeared that Mrs. Ray was born of poor parents who resided on the land of Pollock ; when she was about twelve years old he took her into his family—this was in the year 1836, and with the exception of nine months' absence in 1850 or 1851, when she went to Allegheny city to learn a trade, she continued to live with him till the spring of 1861. In the fall of 1857 she married her present husband, William Ray, who was employed after his marriage by the decedent and lived with his wife in the family of Pollock, till March 1861, when they went to reside in a tenant house on his farm. Pollock was thrice married. He had but one son, by his second wife, Hannah. She died in 1857, and from that time till Mrs. Ray left in 1861, according to the testimony of Mrs. Bilderback, Pollock's niece, she was his housekeeper and had the sole charge of his domestic affairs. The decedent married his third wife in that year and died in the spring of 1872. Nathaniel Pollock, his only child, died before him, in 1870. It appeared that Mrs. Ray was taken into the service of the decedent without any definite arrangement as to the compensation she was to receive or as to the time or terms of payment. In support of the alleged special contract between the decedent and Mrs. Ray, the plaintiff relied upon the declarations made

[Pollock *v.* Ray.]

by decedent in his lifetime as detailed in the testimony of the following witnesses :—

Jane Gordon. " We intend to do as well for her as we do for our own child." * * * " If she lived after him he would do well by her at his death."

Elizabeth Ayers. " He would do well by her, or he would pay her wages ; he intended to leave her and do as well by her as his own ; he intended to do well by her, and at his death he would make her as good as an heir; he did not use the word ' will' or ' heir ;' he said he intended to leave her and do as well by her as his own ; heard him say so more than a dozen times."

The plaintiffs followed the testimony of Mrs. Gordon and Mrs. Ayers with the offer to prove by Douglass Gerry " that James Pollock, the testator, at his decease was the owner of two farms, one of about two hundred acres, and the other one hundred and fifty acres, and to prove the value of the same for the purpose of fixing a standard by which the jury may estimate the damages for the breach of contract.

This testimony was admitted under objection and exception.

The second and third points of defendant, with the answers of the court, were :—

2. The testimony of Jane Gordon that Pollock said in 1858 that " he intended to do as well by her (plaintiff) as he would by his own child—that if she lived after him he would do well by her at his death," and the testimony of Elizabeth Ayers that Pollock said that " he would do well by the plaintiff, or would pay her wages," and that he " intended to leave her and do as well by her as his own" do not amount to such clear and certain proof as the law requires to entitle the plaintiff to recover.

Ans. " We must refuse this point, leaving the jury to determine under the instructions we have given them whether the plaintiff is entitled to recover.

3. This being an action brought after Pollock's death to recover wages for services rendered to him more than ten years before his death, it should be clearly made out by direct and positive testimony ; and the testimony offered by the plaintiff is not sufficient in law to entitle her to recover.

Ans. " We affirm so much of this point as relates to the kind of testimony required to support the plaintiff's claim ; but if the jury find that the decedent did agree to compensate the plaintiff at his death as proven, we cannot say she is not in law entitled to recover."

The court, inter alia, charged :—

" If Pollock settled with the plaintiff before his death for her services, she would have no claim now against his estate. If he did not, she could not still recover unless she has satisfied you that her compensation was deferred till his death ; but, if you are so satisfied, the question would be, what ought she to have ?

[Pollock *v.* Ray.]

Not simply the wages the law would give her upon an implied contract, but what the decedent ought to have given her according to his promise. If he promised to do as well by her as by his own child, his meaning might be that he designed to put her on an equality with his son Nathaniel. In this view, we have received evidence of the value of the decedent's property, and leave it to you to say what the plaintiff should have, regarding what Nathaniel might have received as the only heir of his father, if he had survived him."

The verdict was for the plaintiff for $500. A motion for a new trial was afterwards overruled, and judgment entered on the verdict. The defendant then took this writ, assigning for error the admission of the above-mentioned evidence, the answers to the points and the portion of the charge noted.

*Boyd Crumrine* and *D. F. Patterson*, for plaintiff in error.— The alleged agreement with the decedent had none of the marks of a contract: Neal *v.* Gilmore, 29 P. F. Smith 421.

Thompson *v.* Stevens, 21 P. F. Smith 161, and Graham *v.* Graham, 10 Casey 475, differ from this case. The declarations in the former case were to the effect that, if the plaintiff " would stay with him as long as he lived he would provide and give her plenty after he was gone, so that she need not to work," and, in the latter, " if they would go and live with him until death he would give her as much as any relation he had on earth." These promises were made directly to the parties, face to face, and they did live with those who made the promises until their deaths. Here there was no mutuality of obligation ; no condition to be performed by plaintiff; nothing, in fact, but a declaration of intention on Pollock's part.

The testimony as to the value of the decedent's estate at his death was inadmissible; Graham *v.* Graham, 10 Casey 475 ; Neal *v.* Gilmore, 29 P. F. Smith 421.

There was no such evidence of a contract as should have gone to a jury: Bush *v.* Bush, 9 Barr 262 ; Thompson *v.* Stevens, *supra ;* Neal *v.* Gilmore, *supra ;* Jordon *v.* Dutton, 1 Phila. 437.

*Braden & Miller*, for defendants in error.—There was sufficient evidence to warrant the finding of the jury: Graham *v.* Graham, *supra ;* Thompson *v.* Stevens, *supra;* Cottrell's Estate, 2 W. N. C. 83. There can be no distinction, as insisted, between a promise made before the services are rendered and one made after they are rendered: Snyder *v.* Castor's Adm'r, 4 Yeates 353.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 7th 1878.

The main question in this cause is whether the plaintiff below

[Pollock *v.* Ray.]

gave sufficient evidence of a special contract by which payment for her services was postponed until the death of the decedent, James Pollock. The services for which she claimed to be paid were rendered to him before 1861, when she left his house. Of course, if there was no such special contract as alleged her demand was clearly barred by the Statute of Limitations.

Claims of this character against the estates of decedents, resting on mere oral testimony of declarations or admissions, are very dangerous, and ought certainly not to be favored by the courts. "The danger attendant upon the assertion of such claims requires, as was said by Chief Justice GIBSON, in reference to a somewhat similar contract, that a tight rein should be held over them, by making the quality, if not the sum of the proof, a subject of inspection and governance by the court, and by holding juries strictly to the rule prescribed." Per STRONG, J., in Graham *v.* Graham's Ex'rs, 10 Casey 481.

We think that both the quality and *sum* of the evidence in this case were entirely insufficient. The question ought not to have been submitted to the jury. All the declarations proved were only indicative of an intention to leave the plaintiff a legacy—to provide for her by will. Mrs. Gordon testified that Pollock said : "We intend to do as well by her as we do by our own child." He said, "if she lived after him he would do well by her at his death." Mrs. Ayers testified : "He said he intended to leave her and do as well by her as his own." "He said he intended to do well by her, and at his death he would make her as good as an heir. He said he would will it; did not use the word 'will' or 'heir;' he said he would do as well by her as his own; that is what he said. He just said he intended to leave her and do as well by her as his own." "I heard Esquire Pollock say he would do well by her, or he would pay her wages."

If the declarations had been to the effect that if the plaintiff would remain with him until his death he would then do well by her or pay her wages, there would be some plausibility in the contention that there was a mutual contract; she to serve him until his death, and he either to provide for her by will or pay her wages. It might possibly have been sustained under the case of Thompson *v.* Stevens, 21 P. F. Smith 161. This was not, however, pretended to have been the contract. Had she remained until his death it might perhaps have been implied. But in point of fact she left his service ten years before his death. There was no engagement on her part to remain a day. She might have left immediately and her case would have stood as strong on the evidence as it is now. There is not a scintilla of proof that she assented and agreed to postpone her claim until his death. Had she commenced an action in 1861, for wages then claimed to be due, it would scarcely be con-

[Pollock *v.* Ray.]

tended that the evidence given upon this trial would have prevented her immediate recovery.

There was manifest error in the admission of the evidence as to the amount of the estate of the decedent, and in that part of the charge in which the court instructed the jury, " if he promised to do as well by her as by his own child, his meaning might be that he designed to put her on an equality with his son, Nathaniel. In this view we have received evidence of the value of the decedent's property and leave it to you to say what plaintiff should have, regarding what Nathaniel might have received as the only heir of his father if he had survived him."   As Mr. Justice STRONG has said, in Graham *v.* Graham's Ex'rs, 10 Casey 475, " what less is the result than the establishment of a parol will ?"   " It is a palpable error to say that the damages are to be regarded as a debt or liability of the estate.   They are a distributive share and are claimed and recovered as an equivalent for an inherited portion or a legacy. If they are the fruit of a legal liability of the decedent, then the rule which the plaintiff invokes leads to a still greater absurdity than even a parol will ; for under the contract which she sets up, she is only entitled to a share of what remains after all legal liabilities are discharged, and if those liabilities absorb the whole estate, she is entitled to nothing.   The extent of her right varies with the residuum of the estate and is incapable of measurement until the residuum be ascertained ; there is no possible meter for it."   It is clear that if the plaintiff had succeeded in making out a clear and positive contract between her and the decedent that the payment of her claim should be postponed until his death, all that she could have recovered would have been what she was entitled to on a *quantum meruit* when she left his service.

Judgment reversed.