Erwin M. Beale, Administrator c. t. a. of Dr. Aaron Wolf
    Eyer, deceased, *v.* Mrs. Anna E. Kline and Mrs. Emma
    M. Marsh, Administratrices of the Estate of Mary Eyer,
    deceased, and Isaac A. Kline, Appellants.

*Trusts and trustees—Parent and child—Accounting.*

On a bill in equity by a son's administrator against his mother's admin-
istrator for an accounting, it appeared that the son in his lifetime sent to
his mother two large sums of money without any instructions as to what
she should do with them. The mother kept the money apart from her
own and invested it as occasion offered. When her son sent for money
she obtained it, if not actually at hand, by borrowing, and sent it to him.

From time to time she disposed of the securities and moneys received from them, to repay the loans. By special direction of her son she paid over a portion of the fund to K. who had applied by letter to the son for a loan. The bill alleged and the answer denied that " other large sums of money " were received by the mother from the son. There was no evidence to support the allegation or to sustain a finding by the trial judge that " there must have been accessions to the trust fund from some source." *Held,* (1) that the mother's administrator was chargeable with the two funds which she had received and the interest actually earned upon them, and was entitled to credit for what she had returned to her son, and for what the son had himself lent to K.; (2) that, as the finding of the trial judge as to " accessions " was but an inference, it was not binding upon the Supreme Court.

Argued May 12, 1897. Appeal, No. 174, Jan. T., 1897, by defendants, from decree of C. P. Union Co., May T., 1896, No. 1, on bill in equity. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Reversed.

Bill in equity for an account. Before McCLURE, P. J.

The facts appear by the opinion of the Supreme Court.

The decree of the court below was in part as follows :

1. That the balance due by the said Mrs. Anna E. Kline and Mrs. Emma M. Marsh, administratrices of the estate of Mary Eyer, deceased, to the said Erwin M. Beale, administrator cum testamento annexo of the estate of Dr. Aaron Wolf Eyer, deceased, is the sum of $6,627.66 with interest thereon from November 12, A. D. 1896, made up as follows, to wit:

| | |
|---|---:|
| Cash in hands of Mary Eyer at her death, held in trust for Dr. A. W. Eyer, uninvested, or if invested, not earmarked, and for payment of which assets are in the hands of Mrs. Anna E. Kline and Mrs. Emma M. Marsh, administratrices, . . . . . | $ 896.81 |
| Balance on note of Isaac A. Kline, held in trust by Mary Eyer for Dr. A. W. Eyer, . . . | 1,126.75 |
| Other funds and securities held in trust by Mary Eyer for Dr. A. W. Eyer and which passed at her death in specie into the hands of said Mrs. Anna E. Kline and Mrs. Emma M. Marsh, Administratrices, together with the interest thereon collected while in their hands—balance now in their hands— . . | 4,604.10 |
| | $6,627.66 |

\*    \*    \*    \*    \*    \*    \*    \*    \*

4. That the said Isaac A. Kline pay forthwith to the said Erwin M. Beale, administrator cum testamento annexo of the estate of Dr. Aaron Wolf Eyer, deceased, the sum of $1,126.75, with interest thereon from November 12, A. D. 1896, and that ι pon said payment he be discharged from all further liability upon his said note of May 4, 1887, to the order of Mary Eyer, for $1,500 hereinabove mentioned.

Defendants appealed.

*Error assigned* was decree of the court.

*J. Thompson Baker* and *Samuel H. Orwig*, with them *Philip B. Linn*, for appellants.—An answer which fully denies the allegations of the bill casts the burden of proof upon the plaintiff : Audenreid's App., 89 Pa. 114 ; Campbell v. Patterson, 95 Pa. 447.

The truth of every averment in defendants' answer is established by the evidence. To earmark the money in investments for Mrs. Eyer does not make it a trust fund, and that is the only thing accomplished by the plaintiff.

The orphans' court alone has authority to ascertain the amount of a decedent's property and order its distribution among those entitled to it : Whiteside v. Whiteside, 20 Pa. 474.

*Andrew A. Leiser*, for appellee.—Equity will follow a fund through any number of transmutations, and preserve it for the owner so long as it can be identified, no matter in whose name the legal right stands : Thompson's App., 22 Pa. 16 ; Farmers' & Mechanics' National Bank v. King, 57 Pa. 202 ; Freiberg v. Stoddard, 161 Pa. 257 ; Covington v. Anderson, 16 Lea, 310 ; Murray v. Lylburn, 2 Johns. Ch. 441 ; Platt v. Oliver, 2 McLean, 314 ; Thompson v. Perkins, 3 Mason, 232 ; Holridge v. Gillespie, 2 Johns. Ch. 30 ; Evertson v. Tappen, 5 Johns. Ch. 497 ; Central Nat. Bank v. Conn. Mut. Life Ins. Co., 104 U. S. 54 ; Van Alen v. American Nat. Bank, 52 N. Y. 1 ; Moses v. Murgatroyd, 1 Johns. Ch. 119 ; Indiana I. & I. R. R. Co. v. Swannell, 157 Ill. 616 ; First Nat. Bank of Central City v. Hummel, 8 Lawyers' Rep. Ann. 788.

The burden of proof is upon the defendants : Moore v. Clem-

ents, 6 Wallace, 299; McCoy v. Rhodes, 11 Howard, 131; Shea's App., 121 Pa. 308; Robinson v. Scotney, 19 Ves. 584; Freeman v. Tatham, 5 Hare, 329; Wharton on Evidence, sec. 1107; Hagthorp v. Hook, 1 Gill & John. 272; Paynes v. Coles, 1 Munf. 373; Walton v. Walton, 2 Bennett (Mo.) 376; Gilbert v. Mosier, 11 Iowa, 498; Van Dyke v. Van Dyke, 26 N. J. Eq. 180; Robinson v. Jefferson, 1 Del. Ch. 244; Roberts v. Birgess, 20 N. J. Eq. 139.

OPINION BY MR. JUSTICE WILLIAMS, November 8, 1897:

Mrs. Mary Eyer the mother of Dr. A. W. Eyer died in November, 1888. Her son died in December, 1895. By this proceeding the administrator of the son calls upon the representatives of his mother's estate for an account, and joins Isaac A. Kline with them as their agent, transacting their business, and having as he alleges custody of the funds and securities belonging to the estate. The bill alleges that as early as 1882 Dr. Eyer, then living in Colorado, sent to his mother for investment for his benefit, the sum of $5,500; and that in 1884 he sent to her the additional sum of $1,000 to be held and invested in the same manner. In addition to these two sums the bill avers that Dr. Eyer sent to her, and that she received, " other large sums of money " between May, 1882 and November, 1888 all of which sums were invested by her for his benefit in interest bearing notes. These moneys the bill further charges came at the death of Mrs. Eyer into the hands of the defendants and are unaccounted for. The answer admits that the two sums named were received by Mrs. Eyer, were invested by her for Dr. Eyer, and alleges that they have been accounted for. It denies that any other moneys were ever received by her from her son, or have been received by her administrators on his account.

The evidence on the hearing related mainly to this subject. It showed that Dr. Eyer sent the two sums aggregating $6,500 by mail to Kline by whom they were delivered to Mrs. Eyer and afterwards deposited to her credit in a bank at Lewisburg where she resided. It does not show the receipt of any other money from him whatever. When the two drafts were sent by the doctor they were not accompanied by any instructions, explanations or suggestions whatever. His mother was at first at

a loss to know what to do with the money. She consulted friends and decided to hold it for her son and invest it at interest as opportunity might offer for his benefit. There was as it thus appears no express trust created, no employment of Mrs. Eyer by her son, there was not so much as a hint as to what he wished her to do. Whatever trust existed at any time grew out of the conduct of Mrs. Eyer and was assumed by her when she decided to keep her son's money separate from her own and make it earn for him whatever she might be able to do. She did not assume to keep it at interest otherwise than as opportunities for its investment came to her, and when her son sent for money it was obtained, if not actually at hand, by discounts or by borrowing of some friend, and sent to him. She then so disposed of her securities or moneys received from them as to repay the loans. At one time Isaac A. Kline applied by letter to the doctor for a loan of $1,500 for his own use. The loan was made to him, the money being taken out of his mother's hands for this purpose, and a note for the amount given by Kline to Mrs. Eyer. This sum was therefore taken out of the fund by its owner and invested upon his own judgment. It was in no sense the loan or investment of Mrs Eyer and she is not responsible for it. The note given for it belonged to the doctor when it was taken, and it now belongs to his administrator.

The trouble in this case grows out of the manner in which the account was stated in the court below. The learned judge in his tenth finding of fact held that "there must have been accessions to the trust fund from some source," for which the defendants were bound to account. He did not ascertain the amount of these accessions, or the time when they were made, from any evidence tending to show the sending or the receipt of money, for there was none. No witness testifies to any accession. No check or draft or letter is produced to indicate that the doctor ever made any other remittance to his mother than the two which were admitted in the answer. Neither the doctor nor his mother seems ever to have referred to any other remittance. The bank account of the mother does not show a credit to her for any remittance except the admitted ones. The finding by the learned judge seems to rest upon the fact that certain securities were spoken of as belonging to the fund. This might well have been accounted for by her mode of hand-

ling the fund and the securities. She may have had at one time a security representing some of the doctor's money which she converted in whole or in part to meet the calls upon her by him, or to adjust the securities to the balances of the fund in her hands at different times. But we do not think it justifies the charging of her estate with all the securities in which any portion of his money may at some time have been found. What she is chargeable with is the money she received, and the interest it earned while it was under her control. For this she must account. She is entitled to credit against this sum for what was returned to the doctor, and for what he himself lent to Kline. She regarded her services as a gratuity to her son, and they were rendered with fidelity, and his calls for money responded to with promptness. Whatever balance was left in her hands when she died came to her personal representatives and they are responsible for what came in this manner into their hands. The account of the administrators will be stated by charging the moneys shown to have been actually received by Mrs. Eyer, and taking therefrom the credits to which she is entitled and payments which they have made since her death. The account against Kline will be stated by charging him with his note for $1,500 and with any other moneys collected or received by him belonging to Dr. Eyer and crediting him with all payments made thereon. We do not intend to disregard the rule that gives importance to findings of fact whether made by a master or by the court below. The tenth finding that " accessions " had been made to the fund from some source is not a finding of a fact from the evidence but the inference of the learned judge from Mrs. Eyer's method of dealing with her securities, about the reasons for which nothing appears in the evidence. The basis is too narrow on which to found such a conjecture. We cannot adopt it. It is not necessary in view of our holding as the method of stating the accounts required in this case that we should discuss the assignments of error separately. We have indicated briefly, but with sufficient distinctness, the principles that control the case and determine the liabilities of the defendants.

The decree is reversed that the accounts may be stated in accordance with this opinion. The record is remitted and a procedendo awarded.