## Purves's Estate.

*Contract—Construction of contract—Uncertainty.*

If the meaning of a contract and the subject to which it is to be applied are obscure, indefinite and doubtful, the contract will be held void for uncertainty.

A grandfather wrote to a grandson in Europe urging him to return home, as his services were needed in the grandfather's business. The letter ended as follows: " Attend to the business, and I will leave it to you as I promised you." There was no evidence as to what the grandfather meant by the word " business, " nor was there any evidence as to the terms of the previous promise. It appeared that when the grandfather died the grandson did not assert title to the business, but continued in a salaried position in it at an increase of salary. *Held*, that the contract was void for uncertainty, and that the orphans' court committed no error in refusing to enforce it.

Argued March 20, 1900. Appeal, No. 32, Jan. T., 1900, by Charles S. Purves, from decree of O. C. Phila. Co., April T., 1898, No. 532, dismissing exceptions to adjudication, in the estate of Alexander Purves, deceased. Before GREEN, C. J., DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Exceptions to adjudication.

The facts appear by the opinion of the Supreme Court.

*Error assigned* was decree dismissing exceptions to adjudication.

*Alexander Simpson, Jr.*, for appellant.—The "surrounding circumstances," are vital elements in determining what was the contract: Postlethwaite's App., 68 Pa. 468; Follweiler's App., 102 Pa. 581.

An action will lie against the estate of a decedent for breach of an agreement, to make provision by will for one who, at the request of the promisor, has performed services for him: Walls's App., 111 Pa. 460; Eichelberger's Est., 170 Pa. 242; Thompson v. Stephens, 71 Pa. 161.

*John G. Johnson*, for appellees.—The promise, if any was made in the press copy of the letter, was too vague and uncertain to be enforced.

A promise to leave "the business" does not include the assets thereof.

There was no proof of an acceptance by the appellant of the alleged letter, nor of any action by him on the faith of the same.

OPINION BY MR. JUSTICE BROWN, May 29, 1900 :

Alexander Purves, deceased, against whose estate the appellant makes claim, was a dealer in new and old machinery, iron and other metals. He had been in business in the city of Philadelphia for a number of years. His son, Charles, father of appellant, who died in 1893, had been his partner from 1863, the firm name having been A. Purves & Son. Upon the death of the son, the father became sole proprietor of the business, and continued it in his own name until his death, on May 9, 1897. The appellant had been employed by the firm at a salary at first, of $8.00, and, later, of $9.00 per week. After the death of his father, he continued in the service of his grandfather, at a salary of $15.00 per week, until the latter's death. In May, 1895, he went to Europe, intending to return during the summer, but remained abroad about two weeks longer than he had anticipated, arriving home September 1, and at once resumed his former employment. On August 12, 1895, the deceased wrote him the following letter, which he says he received and is the basis of his claim :

" PHILADELPHIA, Aug. 12, 1895.

"CHARLES S. PURVES,

    " Care THOMAS COOK & SONS,

        "London, Eng.

" I received your letter from Rome, glad to hear from you again.    I have no doubt the sights you see become more interesting every day. · I hope they will make an impression on your mind.    The folks are as well as can be expected; weather is quite warm, I am not feeling well myself, and wish you were home.    There is no one who understands the business which is improving.    Iron has advanced in price.    I sold all the plate iron on Tasker Street, July 27th, to A. V. Kaiser & Co.    The Monitor Turrett and Armor plate at $12 per ton Ships Hull and Deck Plate $10.50 where it lays.    I want you to come home soon as possible.    Don't go any further.    Your services are required.    I have no one I can place any confidence in to settle matters up.    Attend to the business and I will leave it to you as I promised you.

                    "Your grandfather,
                        " A. PURVES."


The claim presented before the auditing judge of $44,831.25, was made up of stock of iron, etc., on hand at the death of the elder Purves, and certain real estate owned and, alleged by appellant, to have been used by him in connection with his business.    This was disallowed by the auditing judge, whose adjudication was confirmed by the court below, and the appeal before us is from the decree confirming the disallowance of the claim.

There is no doubt as to what the decedent wrote to the appellant; but there is uncertainty, very great, as to what he may have meant, and, unless he did mean what the grandson now contends for, we must approve the decree complained of.    The alleged contract can be enforced if it can be definitely determined what the decedent meant by " business," and the terms upon which he agreed to leave the same to the appellant are not obscure, indefinite and doubtful.    On the other hand, if the term " business " is vague, and it is uncertain what the decedent meant when he wrote, " I will leave it to you as I promised you," how can a court determine that an enforceable con-

tract was entered into? If he failed to indicate what he meant by his "business" and to clearly and unequivocally express his intention in the writing upon which the appellant relies, is his estate to be distributed upon guess and conjecture? The learned president judge of the court below properly answered this question in saying: "If the meaning of the contract and the subject to which it is to be applied are obscure, indefinite and doubtful, the contract will be held void for uncertainty." If he needed authority for this, he found it in Sherman v. Kitsmiller, 17 S. & R. 45. Whether the decedent intended by "business" his stock of iron, materials and machinery, book accounts, office furniture, real estate, cash on hand, and "good will" or only the latter, or all combined, is most uncertain, for he gives no intimation of his intention; but equally doubtful are the words "as I promised you." What was his promise? What was his agreement or undertaking with his grandson? Upon what terms and under what conditions had he promised to leave the business to him? The words "I will leave it to you as I promised you" speak of a prior promise or agreement which the grandfather knew the grandson understood; but the court had no proof of what it was, or of the conditions under which it was made, and properly refused to theorize or conjecture what it meant. There is evidence that the appellant did not always understand the letter as he now interprets it and asks us to read it. Upon the death of his grandfather, instead of asserting in some manner his ownership to the business, as would have been most natural if he had then understood the letter as he now says he understands it, he continued simply as an employee, upon a salary raised by agreement with him from $15.00 to $30.00 per week.

In view of the doubt and uncertainty in which the terms of the letter are involved, and the conduct of the appellant, who did nothing to indicate, during the life of his grandfather or even afterwards, until he made this claim, that he understood it, when he received it, to be the contract which he now seeks to enforce, we need say nothing more in our approval of the decree of the court below, which is affirmed and the appeal dismissed at the cost of the appellant.