## Reynolds, Administratrix, v. Williams, Executor.

*Decedents' estates—Contracts of devisement.*

J. died Dec. 31, 1904. By his will he left $15,000 to his sister P. and $15,000 to his sister M., but nothing to his sister V. V. felt badly at having been overlooked, and M. promised to give her one-half of what J. had left her; V. said she would be glad to get it and would leave it to their nephew J. in her will; she failed to do this. In an action by J.'s administrator against V.'s executor, P. testified that M. and V. had told her that such a conversation had occurred and that M. paid V. $7500, which V. deposited in the G. bank. No evidence was produced from the bank showing that the money had been so deposited. The jury found for plaintiff. On motion for judgment *n. o. v.*: *Held,* (1) that the evidence was not sufficiently clear and satisfactory to establish the claim as against the decedent's estate, and (2) that the evidence failed to establish that the gift M. made to V. was conditional upon an agreement by V. to bequeath the money to their nephew, or that the undertaking of V. was more than a voluntary promise without the binding force of a contract either with her nephew or with M.; and judgment was entered for the defendant.

Motions for a new trial and for judgment *n. o. v.* C. P. No. 5, Phila. Co., Sept. T., 1922, No. 3995.

*B. P. Rambo,* for pailntiff; *J. J. Crowley,* for defendant.

MARTIN, P. J., April 4, 1924.—This is an action by the administratrix *c. t. a.* of the estate of James F. Reynolds, deceased, against the executor of the estate of Virginia R. Leedom to recover the sum of $7500 under the terms of a contract alleged to have been made by Virginia R. Leedom in her lifetime with her sister, Mary Reynolds, to bequeath to James F. Reynolds that sum in her will.

The only evidence produced at the trial was the deposition of Pauline A. Reynolds, eighty years of age, a sister of Virginia R. Leedom. She testified that her brother, James S. Reynolds, died on Dec. 31, 1904; by his will he bequeathed to her and to another sister, Mary C. Reynolds, $15,000 each, but made no mention in his will of his sister, Virginia R. Leedom. Mary C. Reynolds lived with her sister, Virginia R. Leedom, in a house in Germantown, which Virginia owned. The witness testified that when the will was probated, Mary said: "Because Virginia seemed to feel bad that nothing was left to her, and my sister said, 'I will give you one-half of what he left me.' Virginia said she would be very glad to get it, and she would leave it to our nephew, James F. Reynolds, in her will." "That was agreed upon and decided and satisfactory to all parties. She referred to it several times and to Jim several times." When asked if Virginia R. Leedom ever spoke to her with reference to the receipt of the $7500 from Mary Reynolds, she replied: "Yes, certainly she received it; she received money and put it in bank, in Germantown Bank. My sister Mary told Virginia that she would give her one-half of what she had received from my brother. That conversation took place from time to time several times. June, 1906, was the first time when the money was put in bank. That was about the time, I think, she received it. It was put in the Germantown Bank." The witness stated that the first time that she heard any discussion or talks between her two sisters relative to the will of her brother was "when the will was read; that was the time it was known. Since the will was read and known, why it was discussed several times. I don't know the exact date when the will was read, but it was known that my sister Mary was to have that much, and she promised one-half of it to my sister Virginia. As soon as my sister knew that she was to receive that much, she right away told my sister Virginia she would give her half. It might have been, I suppose it was 1906, in the summer-time. I was present

Reynolds, Administratrix, *v.* Williams, Executor.

on several occasions when they spoke of it." The witness stated that the first occasion when it was brought up was in June, 1906. When asked to give the words, as near as she could recall, that were used by Mary Reynolds and by Mrs. Leedom, the witness replied: "I heard her speak of it repeatedly. My sister Mary promised it to Virginia as soon as she had control of it, and she would then give it to my nephew in her will." The witness was asked: "That is, Mrs. Leedom told you she would do that?" And answered: "I heard them on several occasions. As soon as it was known that Mary was to get it, she promised one-half of it to Virginia. I heard several discussions, but I did not put down the date and when, but several times, because it was a well known thing that Virginia was to get one-half." She was asked: "Do you mean that your sister Mary had told you that she was going to do that with Virginia?" and replied: "Yes; she promised it to her. It was all settled and agreed and no question of it. I heard them speak of it so often, and always the same thing, that it has always been in my memory." The witness was asked: "What did Mary C. Reynolds say to you? The exact words as near as you can recall," and replied: "Virginia was very much disappointed when brother did not leave her anything, and, to quiet her, I promised to give her one-half of my legacy." Witness added, "and she did. She was very glad to get it and talked it over several times. Virginia told me, possibly the same day, that the arrangements had been made. She told me as soon as it was done. They both told me everything." Witness was not present when the money was turned over. She said: "There was no paper in writing executed between them. Mary got a check for her amount and deposited it in the bank. The money Virginia received was put in the Germantown Bank, and she was and did promise to give $7500 to our nephew." Witness was asked who said that, and replied: "Virginia said; they both said." She was asked: "Mary told you that that was the arrangement and Virginia told you she had agreed to that?" She replied: "Yes, that is correct." When asked "when was the last time that Mrs. Leedom ever discussed with you anything with reference to the proposed giving of $7500 to your nephew, James F. Reynolds?" she replied: "It was repeatedly stated. You cannot expect me to tell you;" and when asked, "When was the last time?" said: "I don't know; she said it several times. It was well known to me and to my sister that one-half of the legacy my brother left was to go to our nephew James, and she said she mentioned it in the will so as to have it without doubt." She was asked: "Can you not refresh your recollection by giving us an idea of the last conversation you had with her on the subject?" and replied: "The conversation was not prolonged. It was her decision. She was going to do it, and as much as if she had already done it, that she would give $7500, given her by Mary to quiet her, that was to go to James F. Reynolds, and put it in her will; it was repeatedly said; at different times she told me her intention. She promised Mary, when she gave it to her, where it was to go. Mary had given it to her, and she was the one who had to dispose of it afterwards, and that was the agreement when my sister gave it to her—she was to leave it to our nephew, James F. Reynolds." She was asked: "That was what Mary told you and what Virginia told you?" and replied, "Yes." "And they were both in your presence when they told you this?" "Yes." On cross-examination, she was asked: "Didn't you say, in answer to a question of mine, that Mary told you that she was going to give it to Virginia because she was angry about the provision of your brother's will, and that possibly the same day Virginia told you of the arrangement between them, and that she was going to provide in her will to that effect? A. Yes, sir. Q. Well, they were

4 D. & C.

Reynolds, Administratrix, *v.* Williams, Executor.

not both present in the same room with you at the time? A. They told me the same thing, whether I was in the room or not. Q. Each told you separately? A. Yes." On redirect examination, she was asked: "Were you all three in the same room together—you, Mary and Virginia?" and answered, "Probably." "Q. Well, will you think it over and tell us what your memory is on it? A. I think it makes no difference. She said it to me, and Mary said it to me, and both said it to me, and I knew the intention. Q. At any time were the three of you together? A. Yes, very often."

Mary Reynolds lived in the house of Virginia Leedom for five years and died there May 5, 1907.

The nephew, James F. Reynolds, having also died, his administratrix is the plaintiff. Virginia Leedom died Sept. 30, 1922, and her executor, Walter Williams, is the defendant.

A verdict was rendered in favor of the plaintiff.

Defendant, having asked for binding instructions, which were refused, moved for judgment *n. o. v.* and for a new trial.

No evidence was produced from the bank in which the witness asserted Virginia R. Leedom deposited the money alleged to have been received from her sister, Mary Reynolds. The witness was not present when the money was paid, and had no direct knowledge that it was ever received by Virginia R. Leedom.

In Pollock *v.* Ray, 85 Pa. 428, 432, Sharswood, J., said: "Claims of this character against the estates of decedents, resting on mere oral testimony of declarations or admissions, are very dangerous, and ought certainly not to be favored by the courts. 'The danger attendant upon the assertion of such claims requires, as was said by Chief Justice Gibson in reference to a somewhat similar contract, that a tight rein should be held over them, by making the quality, if not the sum, of the proof a subject of inspection and governance by the court, and by holding juries strictly to the rule prescribed:' Per Strong, J., in Graham *v.* Graham's Executors, 34 Pa. 475, 481."

In Walls's Appeal, 111 Pa. 460-471, it was said: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done."

There is no evidence that the gift Mary Reynolds made to her sister Virginia was conditional upon an agreement by Virginia to bequeath the money to their nephew, or that the undertaking of Virginia was more than a voluntary promise without the binding force of a contract, either with her nephew or her sister Mary.

The evidence fails to establish a meeting of the minds in a binding contract or to prove that the gift was made in consideration of the promise by Virginia to bequeath the money to James F. Reynolds.

There was no contract that can be enforced against the estate of Virginia R. Leedom.

And now, to wit, April 4, 1924, the rule for new trial is discharged, and it is ordered that the motion for judgment *n. o. v.* be granted and that judgment be entered in favor of defendant.