## Davies's Estate.

*Decedents' estates—Claims against—Agreement to adopt claimant—Evidence.*

1. A claim against a decedent's estate, based upon an alleged agreement to adopt claimant and make her the heir of the estate, must be supported by clear and convincing evidence, establishing a definite contract.

2. The facts that the consent of the claimant's parents to the adoption was secured, and adoption papers prepared but not used, and that claimant took up her home with decedent, are insufficient to show an agreement that claimant should succeed to the estate in any other way than by adoption.

3. As there is no parol adoption in Pennsylvania the claim cannot stand on that basis.

4. Damages for breach of an agreement to adopt are limited to the consideration given therefor. If no consideration is shown, nothing can be awarded to the claimant out of the estate.

*Decedents' estates—Claim for services—Evidence—Quantum meruit—Oral evidence—Findings—Appeal.*

5. A claim against a decedent's estate for a large sum for services rendered, will not be allowed, where the alleged agreement is in parol, and based only on loose declarations of decedent, where the character of the services are not clearly defined, where the

value of such services as were rendered is not shown, and it appears that most of the services for which claim was made, were not rendered at all, or were performed by other parties.

6. Where a claim against a decedent's estate depends largely on the credibility of oral evidence, the findings of the auditing judge thereon, affirmed by the orphans' court, will not be reversed on appeal.

7. Where there is no evidence of the value of alleged services to a decedent, there can be no recovery on a quantum meruit.

Argued April 14, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 114-121, Jan. T., 1927, by Morris Rees et al., next-of-kin, and Appeal, No. 125, Jan. T., 1927, by Hanna Davies, from decree of O. C. Lackawanna Co., No. 48, Year 1923, dismissing exceptions to adjudication in estate of Eleanor Davies, deceased. Reversed as to appeals Nos. 114-121. Affirmed as to appeal No. 125.

Exceptions to adjudication. Before SANDO, P. J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed. Morris Rees et al., next-of-kin, appealed in Nos. 114-121, and Hanna Davies, claimant, appealed in No. 125.

*Errors assigned* by appellants were decrees, quoting record.

*William A. Skinner* and *Francis Shunk Brown,* with them *Ralph W. Rymer,* for Morris Rees et al.—The evidence does not measure up to the standard of proof required in such cases: Graham v. Graham, 34 Pa. 475; Reynolds v. Williams, 282 Pa. 148; Carroll's Est., 219 Pa. 440.

In the following cases the declarations of the decedent on which the alleged contracts were founded were held to be too indefinite and uncertain, and entirely insufficient to establish a special contract: Graham v. Gra-

ham's Exr., 34 Pa. 475; Pollock v. Ray, 85 Pa. 428; Wall's Est., 111 Pa. 460; Wright's Est., 155 Pa. 64; Caldwell v. Taylor, 276 Pa. 398; Breniman v. Breniman, 281 Pa. 304; Thompson v. Stevens, 71 Pa. 161; Miller's Est., 136 Pa. 239; Gilbraith's Est., 270 Pa. 288; Witten v. Stout, 284 Pa. 411.

The measure of damages for a breach of contract to adopt is the value of the services performed or outlay made on the strength of the promise: Carroll's Est., 219 Pa. 440; Kauss v. Rohner, 172 Pa. 481; Pollock v. Ray, 85 Pa. 428; 1 C. J. 1378.

The measure of damages in action for breach of contract to will is the value of the services rendered under the contract, and not the proportion of the decedent's estate promised to be given: Graham v. Graham's Exrs., 34 Pa. 475; Hertzog v. Hertzog, Admr., 34 Pa. 418; Goehring's Est., 70 Pa. Superior Ct. 340; Kauss v. Rohner, 172 Pa. 481; Rehrig's Est., 25 Pa. Dist. R. 173; Purves's Est., 9 Pa. Dist. R. 5; 196 Pa. 438; 41 L. R. A., N. S. 246; Breniman v. Breniman, 281 Pa. 304; Gilbraith's Est., 270 Pa. 288; Neal v. Gilmore, 79 Pa. 421.

*Wallace G. Moser,* with him *Robert G. Coglizer* and *James P. Wilson,* for appellant, Hanna Davies.—Appellant is within the rule that inferences, deductions, or conclusions of the court below from reasoning have no effect upon the appellate court: Gongaware's Est., 265 Pa. 512; Miller's Est., 279 Pa. 30; Kaufmann's Est., 281 Pa. 519; Bierly's Est., 81½ Pa. 419.

We believe the correct rule as to the degree of proof required in a case where claimant is a stranger to decedent is laid down in Gordner v. Heffley, 49 Pa. 163; Kauss v. Rohner, 172 Pa. 481; Currey's Est., 26 Pa. Superior Ct. 479; Conkle v. Byers' Exrs., 282 Pa. 375.

*B. Fenton Tinkham,* of *Tinkham & Myers, Cole B. Price* and *R. W. Rymer,* for appellee, in No. 125, were not heard.

*C. B. Price,* with him *S. B. Price* and *J. H. Price,* for appellee, Margaret Rees Best.—The evidence is sufficient to establish the contract: Lewallen's Est., 27 Pa. Superior Ct. 320; McGinley's Est., 257 Pa. 478; Humbert v. Colonial Trust Co., 269 Pa. 132.

Any particular number of witnesses or any special form of words is not required: Harrington v. Hickman, 148 Pa. 401; Conkle v. Byers' Exrs., 282 Pa. 375; Lewallen's Est., 27 Pa. Superior Ct. 320; Neal v. Gilmore, 79 Pa. 421.

Receiving a portion of decedent's estate under a will, does not preclude a party from setting up a contract to bequeath: Bash v. Bash, 9 Pa. 260, 263, 264; Conkle v. Byers' Exrs., 282 Pa. 375; Dale v. Dale, 241 Pa. 234.

The measure of damages is the value of the estate: Logan v. McGinness, 12 Pa. 27; McGinley's Est., 257 Pa. 478; Lewallen's Est., 27 Pa. Superior Ct. 320.

OPINION BY MR. JUSTICE WALLING, May 9, 1927:

In January, 1923, the decedent, Eleanor Davies, died at her home in Scranton. She was a widow and childless. By her last will she gave her home, valued at five thousand dollars, and one thousand dollars to Mrs. Margaret Rees Best (herein called Margaret), and also gave certain specific bequests to others, amounting to four thousand dollars; as to the balance of her estate, being the major portion, she died intestate. After paying the specific legacies and expenses the executor's first partial account showed a net balance of $32,857.17 for distribution. This the auditing judge awarded to Margaret and from the orphans' court's decree affirming the same, Morris Rees and other collateral relatives brought these appeals. Hanna Davies, not a relative, but claiming as a creditor, also appealed from the decree rejecting her claim. These appeals are all from the same decree and will be disposed of in one opinion, first considering the award to Margaret.

The decedent and her husband, Henry S. Davies, were natives of Wales, but in early life located in Scranton, where by thrift and industry they accumulated a modest fortune. Being childless and sensing the approach of age they decided to adopt or at least take some girl into their home to be a comfort and assistance in their declining years and in the end take, or at least share, their estate. They preferred some one of their blood and so corresponded with Mrs. Margaret Rees and her husband John Rees, residing in Wales, who were relatives and had young daughters, expressing their desire. To further the project Mr. and Mrs. Davies visited Wales in 1896, but failed to accomplish their object. Mr. Davies, however, revisited Wales in 1907 and, with the approval of Mr. and Mrs. Rees, brought back with him their daughter, Margaret, then eleven years of age, who thenceforward was known as their (the Davies') foster daughter. Mr. Davies died in 1910 and, about that time, Margaret, who had completed a course at the graded school, found employment in a silk mill where she remained for some years, then worked as a domestic in private families and later, having taken a course in night school, was employed as a stenographer. Meantime she continued to reside with Mrs. Davies, when there, assisting about the work of the home, and usually gave the latter her wages. She married soon after the decedent's death and continues to reside in the Davies' home which was devised to her.

On her behalf it is contended that as an inducement to secure the consent of her parents, Mr. Davies promised them, in effect, to make her the heir of himself and wife, so that upon the death of the survivor she would have their property, and that later Mrs. Davies ratified the agreement. On a finding to that import the auditing judge and orphans' court awarded the balance for distribution to Margaret. Such a claim against a dead person's estate must be supported by clear and convincing evidence, establishing a definite contract. See Rey-

nolds' Exr. v. Williams' Exr., 282 Pa. 148; Caldwell v. Taylor et al., 276 Pa. 398; Pollock v. Ray, 85 Pa. 428; Gordner's Admrs. v. Heffley, 49 Pa. 163; Graham v. Graham's Exrs., 34 Pa. 475. As stated by Mr. Justice GREEN, speaking for the court, in Wall's Est., 111 Pa. 460, 471: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done." We have searched this record in vain for evidence that meets the required standard of proof in such case. We do not challenge the credibility of the witnesses, that was for the auditing judge and orphans' court, but as to the inferences to be drawn from their testimony an appellate court is never bound by the conclusions of the trial court. See McConville v. Ingham et al., 268 Pa. 507, 519; Gongaware's Est., 265 Pa. 512; Beale v. Kline, 183 Pa. 149, 154. The proof of the alleged contract was primarily by the depositions of Margaret's father, mother and brother taken in Wales after the death of Davies and his wife. The substance of it is that if they would let him take Margaret home he would make her his heiress so that after the death of himself and wife their property would be hers; that to accomplish such purpose he would have his attorney prepare papers which her parents must sign; and that under this agreement Margaret returned with him. Her parents having no adverse financial interest were competent witnesses (Edmundson's Est., 259 Pa. 429, 436) and the testimony was supplemented by proof of declarations of both Davies and his wife to the effect that Margaret was to become their adopted daughter and heir. By virtue of a will made years prior to his death all the estate of Davies became vested in his widow, who in 1913, apparently to carry out the understanding above mentioned, had her attorney prepare adoption papers

and forward them to Margaret's parents in Wales with an explanatory letter. The papers, containing their written consent, were returned to the attorney in Scranton, but for some unexplained reason the decree of adoption was never made or asked for. What the evidence, to which we have briefly referred, tends to prove was an agreement to adopt made by Henry S. Davies and ratified by his wife and the only method by which Margaret was to obtain their property was as heir by adoption. The evidence fails to support the finding of the auditing judge that Davies agreed Margaret should succeed to their property, independently of becoming their child, and much less that his wife ever knew of or ratified such an agreement. The decedent's letters to her husband while he was in Wales in 1907, about bringing home one of the girls, neither made nor authorized any agreement as to property. On the orphans' court's theory, on the death of Mrs. Davies the title to all her property vested in Margaret, so it could not have been shared by another child had one been legally adopted; in fact thereunder the other legacies were void, for if a valid contract was made as to all the property it could not be defeated by a will. It would take a remarkable contract to reduce the ownership of Mr. and Mrs. Davies in their own property, amounting to approximately fifty thousand dollars, to that of a life estate. The fact that they left wills tends to show a belief in their right to dispose of their property. In any case, to sustain such a contract on the recollection of witnesses to conversations heard nearly twenty years before would establish a very dangerous precedent.

It is suggested for Margaret that her claim should be sustained on the ground of an agreement to will her the property. Unfortunately, there is no evidence in the record of such an agreement. There is some evidence that the decedent said she had or intended to will Margaret the property, but none that either she or her husband ever agreed to do so. In the absence of proof of an

agreement to devise, it is not necessary to discuss the measure of damages for breach thereof.

As there is no parol adoption in Pennsylvania (Carroll's Est., 219 Pa. 440) Margaret's claim cannot stand on that basis. Furthermore, damages for breach of an agreement to adopt are limited to the consideration given therefor (see Carroll's Est., supra; Kauss v. Rohner, 172 Pa. 481; 1 C. J. 1376), here, to the value of the services rendered on the faith thereof, of which there is no evidence. It follows that the orphans' court erred in awarding her the estate of which the decedent died intestate. It should have been distributed to the next-of-kin of Eleanor Davies under the intestate laws.

Hanna Davies, a married woman and neighbor of Eleanor Davies, but not a relative, presented her claim for ten thousand dollars on an alleged express contract, made in 1910, that she was to be paid that sum out of decedent's estate for services to be rendered by herself and her husband during the remainder of the decedent's life. Proof thereof was by Esther Smith, the sister of Hanna Davies, the essence of which, in the witness's own words, was as follows: "She [Eleanor Davies] came over to Hanna Davies and she asked Hanna Davies if she would do her work for her and attend to her business during her lifetime, and also if Dave Davies [Hanna's husband] would do the fixing around her property or properties, what she would ask of him during her days......She said if they would do that for her or if they would consent to do that for her she would pay them ten thousand dollars after her death......They were perfectly satisfied and they said they would do it for her." This finds support in alleged loose declarations made by decedent to various witnesses, she being quoted as saying she had promised to pay Hanna Davies ten thousand dollars, or sometimes as saying she was intending to pay her that sum and at other times as saying she was going to pay her well for what she did for her. The proof left somewhat uncertain the nature of the

work and business which was to be done for the ten thousand dollars. There was evidence tending to show Hanna Davies did work for the decedent, including some sewing, mending, washing and occasionally some housework; also did some writing for decedent, who, although of good native ability, was unable to read or write; she could, however, count money and was not easily imposed upon. It appeared that the two women went shopping together and that Hanna occasionally gave the decedent some eatables and also meals. The evidence in reply tended strongly to discredit this claim. Decedent held a mortgage against Hanna Davies and her husband on which they made a payment subsequent to her death. The executor testified that, after he had qualified, Hanna came to him and said she had performed services for decedent of various kinds, for which she should be compensated, but made no claim of any contract for ten thousand dollars or other amount. While Hanna occasionally wrote a letter to Wales for decedent and sometimes wrote receipts for rent, the decedent having five tenants, yet the great majority of the latter's clerical work was done by Margaret and is in her handwriting. The evidence also indicated that the housework, washing, etc., was largely done by Margaret and others, not Hanna, while the fences around decedent's property, which the alleged contract seemed to require Hanna's husband to keep in repair, were found in an advanced stage of dilapidation. The alleged contract was so improbable (see Miller's Est., 222 Pa. 334, 340), and the consideration therefor so uncertain, as to throw doubt upon its legal validity (see Hirst's Est., 274 Pa. 286; Wall's Est., supra; Miller's Est., 136 Pa. 239; Purves's Est., 196 Pa. 438; Sherman v. Kitzmiller, 17 S. & R. 45); but, waiving that, the auditing judge and orphans' court were fully justified in rejecting the claim as not proven. It rested on the credibility of oral evidence, which the circumstances tended to discredit. The estates of the dead would be in great jeopardy if orphans'

courts were bound to accept as verity all testimony given in support of claims made against them, especially when based on conversations occurring fifteen years before the testimony was given. In Conkle v. Byers' Exr., 282 Pa. 375, we merely affirmed the judgment sustaining the contract on the facts as found in the trial court. Hanna's claim depended largely on the credibility of oral evidence as to which we would not reverse the findings of the auditing judge, affirmed by the orphans' court. See Kaufmann's Est., 281 Pa. 519; Fry's Est., 229 Pa. 473; Cowan's Est., 184 Pa. 339. As there was no evidence here of the value of the alleged services of Hanna Davies or of her husband, there can be no recovery on a quantum meruit.

The decree awarding the fund for distribution to Margaret Rees Best is reversed and the orphans' court is directed to make distribution of the same to the decedent's next-of-kin according to the intestate laws of Pennsylvania, costs to be paid out of the estate. The decree refusing the claim of Hanna Davies is affirmed and her appeal is dismissed at the costs of appellant.

Mr. Justice FRAZER and Mr. Justice KEPHART dissented as to the disallowance of the claim of Margaret Rees Best.