Mary Kauss v. John Rohner, Administrator of John
George Kauss, Deceased, Appellant.

*Decedent's estates—Claim for services—Contract—Presumption—Value
of services.*
    Where a girl who has lived in the family of a decedent occupying the re-
lation of a daughter, has proved a contract on the part of the decedent to
leave her all he had, the proof of the contract overcomes the presumption
arising from the existence of the family relation that the services were per-
formed without the expectation of reward, and enables the claimant to re-
cover on a quantum meruit the reasonable value of her services.
    Decedent took into his family to raise a girl six years old, having no
children of his own, under an agreement with the girl's mother that if the
girl remained with him until his death she should have all his property,
which consisted mainly of real estate.  The girl continued to live in the
family of decedent until decedent's death, occupying the relation of a
daughter, and performing services in the household and on the farm.  At
the time of decedent's death plaintiff was twenty-six years old.  Decedent
died intestate.  *Held,* that the measure of the value of the services was
their market value.

*Evidence—Competency of witness—Party dead—Act of June* 11, 1891,
P. L. 287.
    Under the act of June 11, 1891, P. L. 287, by which a surviving party

VOL. CLXXII—31

| 172 | 481 |
| 201 | 268 |

| 172 | 481 |
| --- | --- |
| Case 2 | |
| 21 SC | s379 |
| 172 | 481 |
| Case 2 | |
| 26 SC | 1482 |
| 172 | 481 |
| Case 2 | |
| f 210 | s354 |
| 172 | 481 |
| 219 | 445 |

is made competent to testify to any relevant matter which occurred before the death of the other party, if such matter occurred between the party himself and a person who is living and who testifies against him at the trial, or " if such relevant matter occurred in the presence or hearing of such other living and competent person," the surviving party is not competent unless the living witness has been called, and then to such matters only as he has testified to.

*Statute of limitations—Decedent's estates—Claim for services.*

The statute of limitations does not begin to run against a claim for services rendered to a decedent until his death, where the contract was that they should not be paid for until his death.

Argued Oct. 24, 1895. Appeal, No. 232, Oct. T., 1895, by defendant, from judgment of C. P. Butler Co., March T., 1895, No. 40. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Assumpsit to recover for services rendered to defendant's intestate. Before GREER, P. J.

At the trial it appeared that Mary Kauss, whose real name is Mary Swager, had lived in decedent's family from 1876, at which time she was six years old. It appeared that decedent had no children of his own, and that his wife was an invalid. Desiring a girl to raise, he agreed with Mrs. Swager to take Mary, and if the girl should remain with him until his death, that she should have all he had. On October 31, 1894, decedent was shot dead in his own house by two robbers. He died intestate leaving his wife to survive him.

Plaintiff was called to the stand.

Defendant's counsel objects to the witness if it is proposed to prove anything in the lifetime of the decedent.

The Court: She is competent to contradict any conversation she had with any person, any conversation that took place in her hearing we will receive this, and give you the benefit of an exception. Bill sealed. [1]

Q. The witness who left the stand a moment ago testified to a conversation he heard between yourself and old Mr. Kauss in regard to your going away when you were twenty-one years of age; just state in your own way what that conversation was, and who the witness was that was present, the name of the witness being Mr. Seor, who was present and heard this talk between you at Mr. Kauss's?

Defendant's counsel objects to the question on the ground of the incompetency of the witness, and the purpose of the question is to contradict statements or declarations of the decedent made to the witness, the plaintiff.

The Court: We will receive it and give you the benefit of an exception.   Bill sealed.   [2]

George Seor testified as follows.   Q. Go on and tell what that conversation was?   A. Mr. Reiber: He said he was not present at this conversation, that he (Kauss) told him that Mr. Kauss told this gentlemen (witness) while Mary was present what was said.   George Kauss said, "Mary, why don't you go away?   You have no more right here, you are twenty-one years old."   And she always said she did not want to go away; she said she did not want to go away, that she wanted to stay with him.   Q. Did that take place more than once, any conversation like that?   A. Several times.   He said that she could go away and that she was free, that she was not compelled to stay there, and he said that different times.

The Court: Was Mary present when he said that?   A. Yes, sir, she was there working around and sometimes she was sitting there.

[If Mr. Kauss and the mother made an agreement that she was to go and stay there and work there and continue there until Mr. Kauss's death, if Mr. Kauss through negligence or without expecting to be called away, failed to turn it over, the law says he must give to Mary whatever her services are honestly worth.] [9]

You have not a thing to do with the man over in the Fatherland; it don't make any difference to you; you have not a thing to do with the widow; we have a duty to perform and if we undertake to reach outside to outside contracts we will get more on our hands than we can attend to and we will be doing something that our oaths do not require.   If this is a debt of Mr. Kauss he must pay it and must pay it because it is a debt. This girl offers this proof, and the burden of proof is on her, the burden is on her to show that there was a contract of some kind by which she was to go to this man's house and remain with him during his lifetime and perform and work according to that contract, and she must show that she did it and when she had done that then she had complied with her part and she

can recover. What was the contract? Mr. Kauss is dead; death has closed his lips; they are sealed forever; he is not here and he cannot tell what the bargain was; the law seals this girl's lips, therefore the proof must come outside of them. She puts on the stand her mother, who says this; I will read from her testimony: " Q. Did you have any conversation afterwards with him about it? A. Yes, sir, after she was there a while he came down and got me at Harmony and when he was bringing me back he said if I would leave her with him until his death all he had should be hers, and what he had was hers. Q. Did he tell you what he had? A. The farm and all he had. Q. Did you assent to this arrangement? A. Yes, sir." [If what that lady says is true then there was a contract made on which this girl can recover unless she has in some way violated that contract.] [10] Is it true? If it is not we cannot receive loose declarations to others to establish contracts; there was the proof of Mr. Kauffman and Mr. Dunbar as to statements the old man made to them within the few last years as regards this property. If the mother had not made this arrangement this testimony would not be proper, but it is proper to support and corroborate her statement, [and if you believe that this old gentleman told Mr. Kauffman and Mr. Marburger and Mr. Ripper and Mr. Mc-Niel and Mr. Dunbar that he was going to give this farm to Mary, it is strong corroborative evidence that he made the contract just as Mrs. Williams said he did; you have a right to take it for that purpose.] [11] I said a minute ago that Mary could not be a witness to testify to anything that occurred in the lifetime of the decedent because he cannot tell what occurred, neither does the law allow her to tell, but a latter act allows a party to testify or deny or explain a conversation that is alleged to have taken place between the witness and another party who is a competent witness to testify. [The defendant having put Mr. Seor on the stand to testify to a conversation he heard between Mary and Mr. Kauss relative to this contract, then the law allows Mary to come on the stand and tell her side of the conversation, but nothing else. When Mr. Seor testified then Mary became competent, and you heard her statement.] [12] Let me say if there was a contract between Mary and her mother and Mr. Kauss, as Mrs. Williams says there was, and Mary went on and fulfilled her part and was performing her part of

the contract and had done so for fifteen years, Mr. Kauss could not terminate it then after having received fifteen years of her work, but if Mary went away that was the end of it, but if Mary refused to go and stayed, the old man telling her to go would not terminate it, because you can easily see it would not be fair to receive the benefit of a contract for fifteen years and when he would not need her services much longer that he could terminate it and turn her out without anything, and if she was told to go, that would not terminate this contract unless Mary went away and gave it up.] [13] Mary had a right to say, " I have a contract with you and I want my pay, and I cannot get it until you die, and I am going to stay with you until you die." You heard what she said as regards to what the old man did say. Is that true? If it is then she must recover in this case.] [14]

The defendant in this case is an administrator; he is one of the best men in our county, and more than that he wants to do what is his duty, and so far as he is concerned he is doing exactly right. The next question, if you find there was such a contract, is how much are you going to give her. If he were worth a hundred thousand dollars she cannot get this property. She can only get what her services are worth, because the conveyance was not made to her in Mr. Kauss's lifetime. What was it honestly worth? You are here to measure out justice between these parties; you know neither of them; you like the estate as well as Mary; you should not like one better than the other; it is for you to decide how much Mary ought to get; [Mary worked on the farm and in the house; she worked from the time she was six years old until she was twenty-five; part of the time she went to school. The time she was away learning to sew would not be a forfeiture of this contract on her part; she was given her services and you have a right to believe that she was learning to sew for the benefit of the family, to sew for Mrs. Kauss.] [15] [She had no right to anything for services until the old man's death.] [16]

What were her services worth, taking off the schooling she got, and books, and any medicine that there is any proof of, and clothing,—take it all off. [If she worked faithfully and honestly, what were her services worth to this old man and woman? On your oaths and consciences, on the spirit of honor and fairness, on the spirit of right and justice what ought she to get

from this estate?] [17] [You heard the testimony of some very good men in the county; you heard the testimony of Mr. Marburger and Mr. Kauffman and Mr. Ripper; are they right? You are not bound to their statements;] [18] [you heard the statement of the old gentleman on the part of the defense; are old men as liberal as younger men? Have they gotten down to the idea that our people have, as to wages? Give that honest consideration and render such a verdict as will give this girl every dollar that is due her honestly.] [19] She got her clothing and [you have a right to consider this that she was not to get any money until his death; suppose she had got wages, would the interest in the long run amount to her clothing? Had she gotten her money every Saturday would it have come to what her clothing amounted to?] [20] [You cannot go over three thousand dollars; you only go as far as the sworn proof will justify you; come down to the proof and say how much her services are worth; take it up and render a verdict, and if you find for the plaintiff you say, we find for the plaintiff so many dollars; I will not fix any amount; I would not suggest any amount; that is for you; that is about what I have to say to you.] [21] As regards the statement of the limitation, it was suggested that you could not go back further than six years. The law is this, that a man must collect his debts within six years after they are due, and if he does not he cannot collect unless he shows some promise to pay it; [this money would not be due Mary until the old man's death. Suppose she had sued at the end of ten years she could not recover; why, because the contract was that she was to be paid at his death; the time did not come until the old man breathed his last, and if she can collect anything she can collect all.] [22]

Defendant's point, among others, was as follows:

4. There can be no recovery for any services rendered to the decedent that were not performed within the last six years prior to the bringing of suit. *Answer:* That is refused, because she could not sue to collect any time until after Mr. Kauss's death. [5]

Verdict and judgment for plaintiff, $3,000. Defendant appealed.

*Errors assigned* were, (1, 2) ruling on evidence, quoting the bill of exceptions; (5, 8–22) above instructions, quoting them.

*W. H. Lusk,* for appellant.—The contract, if any, is too uncertain to admit of enforcement: Graham v. Graham, 34 Pa. 475; Sherman v. Kitsmiller, 17 S. & R. 45.

If services are rendered merely with the expectation of a legacy the promisee takes his chances, and if he is disappointed he can recover nothing: Miller's Est., 136 Pa. 239: King's Est., 150 Pa. 143; Pollock v. Ray, 85 Pa. 428; Duff v. Gilmore, 33 Leg. Int. 65; Hartman's App., 3 Grant, 271; Graulich's Est., 31 P. L. J. 341; Houck v. Houck, 99 Pa. 552; Zimmerman v. Zimmerman, 129 Pa. 229; Murphy v. Corrigan, 161 Pa. 59; Burgess v. Burgess, 109 Pa. 312; Wall's App., 111 Pa. 460; Harbold v. Kunz, 16 Pa. 210; Keyser's App., 124 Pa. 80.

Plaintiff was an incompetent witness: Act of May 23, 1887, P. L. 158, Krumrine v. Grenoble, 165 Pa. 98; Thomas v. Miller, 165 Pa. 216; Irwin v. Patchen, 164 Pa. 51.

The claim was barred by the statute: New Holland Turnpike Co. v. Farmers Ins. Co., 144 Pa. 540; Stewart v. McBurney, 16 Pitts. L. J. 307; Sankey v. McElvey, 104 Pa. 265; Taggart's Est., 167 Pa. 467.

Jurors catching the tone and temper of their conclusions from the strong and figurative style of the judge fail to give the facts their true weight which a cool and fair statement is calculated to produce: Coxe v. Deringer, 82 Pa. 236.

A charge whose tendency as a whole, is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error: Heydrick v. Hutchinson, 165 Pa. 208.

*Lev. McQuistion, J. C. Vanderlin* with him, for appellee, cited on the question of contract, Thompson v. Stevens, 71 Pa. 161; Moorehead v. McKinney, 9 Pa. 265; Pollock v. Ray, 85 Pa. 428.

Cited on the competency of plaintiff as a witness: Thomas v. Miller, 165 Pa. 216; act of June 11, 1891, P. L. 287.

OPINION BY MR. JUSTICE FELL, January 6, 1896:

While much of the testimony intended to establish a contract to compensate the plaintiff for the services she rendered the decedent consisted only of the proof of loose declarations of testamentary intention, there was enough that was direct

and positive to justify the submission of the question of the existence of a contract to the jury. Proof of the contract did not entitle the plaintiff to recover the value of the estate: Hertzog v. Hertzog, 34 Pa. 418; Graham v. Graham's Executors, 34 Pa. 475; Pollock v. Ray, 85 Pa. 428. But it overcame the presumption arising from the existence of the family relation that the services were performed without the expectation of reward, and enabled her to recover on a quantum meruit the reasonable worth of her services. As the right to compensation did not mature until the death of John Kauss, the statute of limitations interposed no bar to the recovery of any part of the claim.

It was not error to permit the plaintiff to testify. A witness called by the defendant had testified to a conversation which occurred in his presence between the plaintiff and the decedent touching the contract relation between them. In contradiction of this testimony the plaintiff was allowed to state what this conversation was. Her examination was limited to the conversation which had been detailed by the preceding witness, and no new matter was introduced. By the act of June 11, 1891, a surviving party is made competent to testify to any relevant matter which occurred before the death of the other party, if such matter occurred between himself and a person who is living and who testifies against him at the trial, " or if such relevant matter occurred in the presence or hearing of such other living and competent person." To this should be added the construction given in Roth's Estate, 150 Pa. 261, that the surviving party is not competent unless the living witness has been called, and then to such matters only as he has testified to. The act applies to conversations or occurrences which took place in the presence or hearing of the witness who has testified and whom it is proposed to contradict: Thomas v. Miller, 165 Pa. 216. See also Krumrine v. Grenoble, id. 98. The living witness to the conversation between the decedent and the plaintiff having testified, the plaintiff was competent to contradict him and to state her recollection of what was said.

The plaintiff's claim was not without substantial merit, but she was entitled to recover, if at all, only upon her strict legal standing, and to the extent of the market value of the services

which she performed. The case belongs to a class requiring the most thorough scrutiny, and in which jurors should be carefully instructed and restrained. In this respect we feel constrained to hold that the charge of the learned judge was inadequate and to some extent misleading. That portion of the charge which is the subject of the seventeenth assignment of error set up a wrong standard by which to estimate her wages, and instead of confining the jury to the proper grounds for recovery tended to incite them to follow their own inclinations and to do what the decedent had failed to do, give the plaintiff practically the whole estate. In addition to board, clothing, care, education and full maintenance the verdict gives her wages at a rate exceeding three dollars a week from the time she was six years old, and for no reason more apparent or convincing than that given by one of her principal witnesses to justify his estimate of the value of her services, that "she ought to have it." This result could not have been reached by any fair calculation, and we assume that it would not have been if proper instructions had been given.

The standard was the market value of what she had furnished, and to this the jury should have been confined by clear, distinct and guarded instructions; and they should not have been permitted under color of wages to have found the value of a bargain which she could not, and was not attempting to enforce.

The seventeenth assignment of error is sustained, and the judgment is reversed with a venire de novo.