## Royer's Estate.

*Decedents' estates—Promissory note—Findings of fact—Evidence—Want of consideration.*

Where a claim is presented against a decedent's estate on a promissory note given by the decedent to the claimant as payee, checks of decedent dated prior to the making of the note are inadmissible as evidence of the payment of the note; and in such a case want of consideration for the note is not established by evidence that the decedent in giving the note to the payee said: "Here is something for you.  I would give you the money for this, but my financial affairs are somewhat tied up. It will suit me a great deal better to give you this.  Will it do just as well?"  And that the payee said: "That is quite nice," in a laughing way.

A finding of fact by the orphans' court that there was want of con-

sideration for a promissory note given by a decedent to a woman, and that there was a meretricious relation between them, will be reversed where there is no evidence to support the findings.

Argued March 19, 1907.    Appeal, No. 332, Jan. T., 1906, by Fanny Harrington, from decree of O. C. Montgomery Co., March T., 1906, No. 15, overruling exception to adjudication in Estate of Lewis Royer, deceased.    Before Mitchell, C. J., Fell, Brown, Mestrezat and Stewart, JJ.    Reversed.

Exceptions to adjudication.
The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in overruling exception to adjudication.

*Charles F. Linde*, with him *Henry I. Fox*, for appellant.

*Montgomery Evans*, with him *John M. Dettra*, for appellees.

Opinion By Mr. Justice Brown, April 22, 1907 :
The claim of the appellant which was disallowed was on a promissory note made by the decedent on August 9, 1903, for $2,000, payable to her order one year after date, with interest. The execution of the note was established and it was admitted in evidence without objection.    When asked by the court what the nature of the defense to it was, the reply was that it was without consideration, and, if there was a consideration, it had been paid.

By no one of the witnesses called by the estate was it shown that the note, or any portion of it, had been paid.    The adjudicating judge admitted in evidence a number of decedent's checks produced by the appellees, stating that he assumed they were offered to show payments on the note.    One of the offers embraced eight checks.    In only two of them was the appellant the payee, and they, with five others, had been drawn before the execution of the note.    Four of them had been drawn in 1901, two in 1902, and one in May, 1903.    The only one drawn after the execution of the note was dated October 1, 1903, and was payable to the order of James McCarter, who received it from the appellant in payment of rent for a house. Another offer included thirteen checks, all of which were paya-

ble to the order of Strawbridge & Clothier, and only two of them were drawn after August 9, 1903. These checks, of course, ought not to have been admitted as evidence of payments on the note, and when counsel for the estate closed their testimony they did not pretend that any proof of payment had been submitted, but relied upon what they regarded as proof offered by them of want of consideration, and called upon the appellant to prove consideration for the obligation held by her. The claim was not disallowed because the note had been paid, but solely on the ground of want of consideration.

What is said of the failure of the executors to prove payment of the note is equally true of their failure to submit any evidence showing want of consideration. Nothing at all was shown by them going to the consideration. They offered no evidence as to why or under what circumstances the note was given, and, when they closed their case, there was nothing before the court on the subject of consideration, except what was before it when the note was received in evidence, bearing on its face prima facie evidence of consideration. The maker stated he had given it "for value received." The burden of rebutting consideration was upon the appellees: Conmey v. Macfarlane, 97 Pa. 361. This they have not rebutted. The appellant, in rebuttal, needlessly called a witness, T. H. Moore, to prove the circumstances under which the note was given, and, on the oral argument before us, counsel for appellees contended that, if they had failed to show want of consideration, it had been shown by the appellant herself through this witness. The court below seems to have been of this opinion, but in it we cannot concur. The testimony of Moore was as follows: "We were playing cards, Dr. Royer, Miss Harrington and myself, in the dining-room. The clock struck nine. Dr. Royer said, 'You will excuse me now. I am not quite as young as I used to be. I always make it a point to go to bed at nine o'clock.' He started out of the room, came back again, put his hand in his pocket, and said, 'Here is something for you, Fanny.' I think that is what he called her. He said, 'I would give you the money for this, but my financial affairs are somewhat tied up now. It will suit me a great deal better to give you this. Will it do just as well?' She took it over to the light, looked at it, threw it on the table and said, 'That is

quite nice,' in a laughing way. I took it and saw it was that note. I handed it back to her and said, 'Yes.'" This testimony, instead of being consistent only with the theory that the note was without consideration, is entirely consistent with the execution and delivery of it for a valuable consideration, and nothing said by Moore can be regarded as evidence overcoming the presumption of such a consideration. If the note was a mere gift from the decedent, he would hardly have felt himself called upon to make excuse for not having the money to give to her in its stead. He said just about what is frequently said when a debtor, not having ready funds at his disposal, asks his creditor to take his obligation, and her reply in accepting it, in view of the admittedly friendly relations existing between them, is not to be construed as an admission by her that she received it as a gift. On a theory unsupported by evidence that the note was a gift, it was disallowed, and, in disallowing it, the court said: "The decedent at the time was a man of means, the president of a national bank; he was not engaged in active business, and it would seem his situation did not require him to borrow money. We conclude that there was no consideration for the note, and that it was a gift of the decedent to claimant." Men of means, presidents of national banks, not engaged in active business, at times borrow money, though their situations do not seem to require it, and, when they do, it is their own business, and their obligations are no more to be suspected as mere gifts than are the obligations of those who are naturally expected to borrow.

The adjudicating judge apparently did not have very great confidence in his conclusion that the testimony of Moore indicated that the note was a gift, for he further held that from the facts and circumstances shown by the appellees he was led to the conclusion that the relation between the claimant and the decedent at the time the note was given were meretricious and unlawful, and that the burden was, therefore, cast upon her to prove its consideration, and "to explain away all suspicion of illegality concerning the transaction." In the testimony, which is not voluminous, we can find nothing justifying the conclusion that the relation existing between the decedent and the claimant was of such a character as to cast upon her the burden of explaining away all suspicions of the illegality

of the note.   There is no evidence of its illegality.   The decedent was an old man between seventy and eighty years of age, his wife was dead, and none of his immediate family were around him.   It was but natural that he should take some one into his home on his farm to board him and to look after him, and that the claimant there rendered these services to him, that he subsequently, when she moved to Philadelphia, stopped with her, and at times overnight, and may have, therefore, helped to contribute to the expense of her housekeeping, are not circumstances from which the conclusion should follow that he was living in illicit relations with her, and that the note which he gave her resulted from them.   There is no presumption that their relations were meretricious.   The presumption is always in favor of innocence.   The finding that this old man and the claimant were living together unlawfully was based not upon evidence, but upon suspicion.   One of the findings is that he was "susceptible to the wiles and influences of a young woman."   There is not a line in the testimony to justify this, or that the claimant, if she was wily, ever attempted to exert any undue influence over him.   No fact developed, from the time the old man took the claimant into his home on his farm down to the time that he died, showed their relations to have been unlawful.

Findings of fact by a lower court are rarely set aside.   .This is so because facts are rarely found without some evidence to support them.   If there be evidence to support them, they are not to be set aside because we might have found differently, but when there is no evidence to support an alleged material fact the finding of it must be set aside.

The decree of the court below is reversed, and the record remitted, with direction that the claim of the appellant be allowed.