## Caldwell v. Taylor et al.

*Contracts of devisement—Evidence—Sufficiency.*

1. Evidence to sustain a contract against a decedent, made up solely of declarations after the time of the alleged contract, should clearly indicate the terms of the contract and that it was agreed to by both parties.

2. In an action on a contract of devisement, plaintiff's evidence consisted wholly of declarations by decedent to third persons, made in plaintiff's presence, that, in consideration of her remaining with him and his wife during their lives and taking charge of their house, he was to devise to her No. 1816 South Broad Street, Philadelphia, and, subsequently, that, in consideration of her marrying C. and "coming down and looking over the house as often as possible," he would devise this property to her. Plaintiff married C., but there was no evidence that she lived with decedent and his wife during their lives or that she continued to look after the house after her marriage, or that she married C. in fulfillment of the contract. The jury rendered a verdict in her favor of $9861.60, being the value of the house and contents. On motion for judgment *n. o. v.: Held,* that the terms of the contract, its acceptance and performance were involved in uncertainty, and judgment for defendant.

*Contracts of devisement—Breach—Damages.*

3. The measure of damages for breach of a contract to devise real estate for services rendered is the value of the services, not the value of the real estate.

Motion for judgment *non obstante veredicto* for defendants. C. P. No. 5, Phila. Co., March T., 1920, No. 1783.

*A. S. Ashbridge,* for plaintiff; *F. B. Stockley,* for defendants.

HENRY, P. J., 52nd judicial district, specially presiding, April 20, 1922.— The plaintiff brought this suit upon an alleged contract claimed to have been made with John R. Taylor, now deceased. The jury returned a verdict in favor of the plaintiff for $9861.60. The defendants, at the trial, presented a motion for binding instructions, and now ask for judgment *non obstante veredicto* upon the whole record.

The claim of the plaintiff is based upon an alleged contract claimed to have been made with the plaintiff by said John R. Taylor when the plaintiff was in her minority, the substance of which was that if she remained with said Taylor and his wife during their lives, taking charge of the house and looking after them, he would devise to her the house No. 1816 South Broad Street, Philadelphia, and the contents of said house, and that subsequently, in consideration of the plaintiff's marrying Robert Caldwell, a relative of the said Taylor's wife, he would give her said house and its contents. The evidence to sustain these alleged contracts consisted in declarations of said John R. Taylor. The first contract was said to have been made in 1892, and the marriage of the plaintiff to Caldwell occurred in 1899. Elizabeth V. Maguire testified that, subsequent to 1911 or 1912, Taylor had said to her in the presence of the plaintiff that the house and contents belonged to the plaintiff because of her kindness and services to them, and because of her obedience in marrying Robert Caldwell. The witness later testified that, "in consideration of Beckie's marriage to Caldwell, Taylor was to devise this property to her at the time of his death." A witness named George W. Caldwell testified that in 1892 Taylor, in the presence of the plaintiff, said he had just made an agreement with her that "if she stayed with them and took full charge of the house and looked after him and mama, he would leave the house No. 1816 South Broad Street and the contents to her at his death for such services rendered to them." He also testified that, just before plaintiff's marriage, Taylor said in her presence, "as long as Rebecca had stayed with them as long as she had, and she was marrying Robert Caldwell and would come down and look over

the house as often as possible, he would still hold to the former agreement originally made and leave the house No. 1816 South Broad Street to her for services rendered." Again, he testifies that a week or so after the marriage, on July 4, 1899, Taylor said in plaintiff's presence: "I just made an agreement with Rebecca on her wedding-day that I would turn over the house and contents, fully furnished as it now is at No. 1816 South Broad Street for marrying Robert and carrying out our wishes." The witness further testified: "He said about the marriage, if she would agree to marry Robert Caldwell, he would give her the house No. 1816 South Broad Street, which he did so, . . . and everything would be left to her at his death and he would carry out all those former agreements." There was some further evidence of a weaker character, as to declarations by Taylor that the house and contents were to belong to the plaintiff for services she had rendered and in carrying out their wishes in marrying Caldwell.

Evidence to sustain a contract against a decedent, made up solely of declarations after the time of the alleged contract, should clearly indicate the terms of the contract and that it was agreed to by both of the parties. The only evidence of the agreement of Rebecca Caldwell to these alleged contracts is that she was present at the time the declarations were made, and that she continued to live in the household of the said Taylor up to the time of her marriage, and that she did marry Caldwell. The condition of the alleged promise to give the said house and contents to the plaintiff if she lived in the household of the said Taylor and his wife and looked after them until their death might be deemed to have been waived if her leaving Taylor's home was at his request. The evidence indicates that she married Caldwell at the request of Taylor, but there is nothing to indicate that Taylor had agreed to relieve her from her part of the contract of looking after his household and caring for him and his wife. With respect to the contract claimed to have been made in consideration of her marriage to Caldwell, the only evidence that comes close to indicating that she married Caldwell in consideration of a promise by Taylor to give her the house in question and its contents is that of the witness Caldwell, when he says that "he (Taylor) said about the marriage, if she would agree to marry Robert Caldwell, he would give her the house No. 1816 South Broad Street, which he did so, . . . and everything would be left to her at his death, and he would carry out all those former agreements." This does not clearly establish that the promise was made by Taylor in consideration of her willingness to marry Caldwell, and that she, upon her part, married Caldwell in consideration of this promise. Moreover, according to the testimony of the same witness, this was coupled with the provision that, after her marriage to Caldwell, she "would come down and look over the house as often as possible." There is no evidence that the plaintiff performed her portion of either of these agreements in living in the household of Taylor and his wife and looking after them during their lives, under the first contract, or in continuing to go down and look after them, as testified under the second alleged contract.

We do not think this verdict should be permitted to stand; first, because the terms of the contract and the acceptance of these terms by both parties do not clearly appear; and, secondly, because the plaintiff has not shown full performance of the terms of the contract upon her part. The verdict as rendered is open to the further objection that that portion of it given for the value of the real estate is based upon the value of the property at the time of the death of Taylor. It seems to be established in Pennsylvania that the measure of damages for the breach of a contract to devise real estate for

services rendered is the value of the services and not the value of the real estate: Hertzog v. Hertzog, 34 Pa. 418; Kauss v. Rohner, 172 Pa. 481; Goehring's Estate, 70 Pa. Superior Ct. 340. No evidence of the value of the services was presented at the trial, and, consequently, the portion of the verdict for the value of the real estate could not stand.

And now, to wit, April 20, 1922, judgment *non obstante veredicto* upon the whole record is hereby entered in favor of the defendants. An exception to this action of the court is hereby noted in favor of the plaintiff.