## Hartman's Estate.

*Decedents' estates—Claims for housekeeping and nursing—Necessary evidence—Staleness—Presumption of payment.*

1. A claim for $6825 for services rendered decedent by claimant as housekeeper and nurse, being at the rate of $25 per week from Aug. 24, 1919, to Nov. 21, 1924, with interest thereon, will not be allowed where decedent required a nurse for only nine weeks before his death, and there is no evidence indicating what part of the claim is for nursing and what part for housekeeping.

2. Such a claim is stale in the absence of some explanation of claimant's failure to present it in decedent's lifetime, and the presumption of payment arising from lapse of time is not rebutted by admissions by decedent, in the absence of claimant, to the effect that he had not paid her wages, that he owed her "a few thousand dollars" and that he was going to pay her.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1925, No. 3373.

*Keller Hughes Gilbert,* for exceptions; *George H. Detweiler,* contra.

THOMPSON, J., April 30, 1926.—The decedent died Nov. 24, 1924, leaving a widow and one son, now about seventeen years of age, and a will, whereby he gave his entire estate to his son. The widow has elected to take against the will, and at the audit of the account of the executor a claim was presented by Anna B. Ehrenzeller for services as housekeeper and nurse to the decedent in the sum of $6825, being at the rate of $25 per week from Aug. 24, 1919, to decedent's death, Nov. 24, 1924, together with interest thereon. As decedent did not leave his wife until May, 1920, claimant reduced her claim to the sum of $6214, that being the aggregate amount at the rate claimed for the four years immediately prior to decedent's death.

The Auditing Judge rejected said claim, and in so doing we are of the opinion that he committed no error. As exceptions were filed to the action of the Auditing Judge, and the same were argued with great force, we have read the testimony carefully, and from the same it appears:

1. That the decedent at the time of his death was about sixty-nine years of age; that of the claimant does not appear; that he was actively engaged in business at the southwest corner of 5th and Callowhill Streets, Philadelphia, where he conducted an establishment for the compounding, mixing and selling of soft drinks, in connection with a partner in said enterprise. In May, 1920, decedent left his wife and son and lived at various places in the City of Philadelphia, where he rented an apartment which he occupied in conjunction with the claimant. No maid was employed, and claimant cooked the meals for the decedent as well as herself, kept the apartments tidy, and did those things which are generally done by a housekeeper or wife. No explanation is attempted as to why decedent left his wife.

2. That the relations between claimant and decedent were meretricious.

3. That, at the most, decedent was not incapacitated from attending to his business daily for more than nine weeks during the period of four years for which claim was made, and his physical condition was not shown to be such as to require the services of the nurse during the entire four-year period.

4. The claim is not made on an express contract, but a *quantum meruit.*

The claim for $25 per week for the period of four years prior to the death of decedent is for services rendered as housekeeper and nurse. As decedent did not need the services of a nurse for more than nine weeks during that period, we have no information as to how much of the claim is for housekeeping and how much for nursing. As was said in Hirst's Estate, 274 Pa. 286, 288: "A claim against the estate of a decedent must be as definite and

precise as is required to recover a debt in an action at law. While formal pleadings are dispensed with, the claimant should produce evidence showing the nature and character of the debt, its origin, the terms of the contract and the exact amount claimed to be due. In an action at law, he is required to show the net balance, and in the claim presented against this estate the amount does not appear with the exactness required in proving claims of this character."

Furthermore, the claim as made is presumed by law to be paid, and claimant, in an effort to rebut this presumption, called as her witness Dr. Emanuel, who testified as follows (pages 11, 12):

"He (decedent) told me on each occasion that she was not being paid weekly, but that he would pay her. That happened on more than one occasion. . . . Two days before his (decedent's) death, on the 22nd, . . . he (decedent) said to me again, . . . 'I have not paid her anything yet, but, doctor, I am going to pay her; . . . I owe her a lot of money; I owe her a few thousand dollars, and I am going to make arrangements in my will to pay her.' They were his very words, as true as I have touched that Bible. . . . That was two days before his death. . . . He said he owed his life to her; without her, or without a practical nurse, that man would have been dead long ago."

The circumstances under which these statements were made do not clearly appear. Claimant was not present, and the explanation of Dr. Emanuel as to how the conversation came about is most unsatisfactory. Dr. Emanuel states that as he was so impressed with the care and attention which claimant was giving decedent, he thought she should be well paid, and expressed a curiosity to know whether she was being well paid, and asked decedent concerning the same. That is his explanation as to how the conversation came about. The Auditing Judge who saw the doctor on the stand states in his adjudication that he "was not impressed" with Dr. Emanuel's testimony, nor are we after reading the same.

Furthermore, the claim is a stale one, and as was said in Gilbraith's Estate, 270 Pa. 288, 291: "We said in Carpenter v. Hays, 153 Pa. 432, 434, and have since frequently repeated, 'without variableness or shadow of turning' therefrom, that 'claims against a dead man's estate, which might have been made against himself while living, are always subjects of just suspicion, and our books, from Graham v. Graham's Exec'rs, 34 Pa. 475, to Miller's Estate, 136 Pa. 239 (249), are full of expressions by this court of the necessity of strict requirement of proof and the firm control of juries in such cases.' And again (page 435): 'The presumption grows stronger as each period of payment goes by. In the nature of things, it is less potent against a claim for two or three months' wages than for two or three years. . . . As said by our late brother Clark in Gregory's Exec'rs v. Com., 121 Pa. 611: 'The presumption will gather strength with each succeeding year, and the evidence to overcome it must, of course, be correspondingly increased.'' Experience has demonstrated not only the wisdom of these rules, but the necessity for even more strictly adhering to them, and we propose to use the light thus cast upon our pathway."

No explanation is offered by the claimant as to why her claim was not made in the lifetime of the decedent, such as a declaration of the decedent to the effect that he had no ready money, as was shown in Royer's Estate, 217 Pa. 626. Where a claim is made against a decedent's estate that could have been made in the lifetime of the decedent, some satisfactory explanation as to why said claim had not been made should affirmatively appear. Many reasons

suggest themselves as to why a decedent does not pay an honest obligation in his lifetime, such as shortage of ready cash, his money being invested and not caring to sell investments; ownership of real estate which is vacant or needs repairs, personal and family obligations which require the use of what ready money decedent had, and any other similar facts bearing on the subject.

As the claim here made is without merit, the Auditing Judge was correct in dismissing the same. It would require much stronger proof than claimant has offered in justifying us in diverting a man's estate from his wife and child in favor of a woman with whom he was living.

All exceptions are dismissed and the adjudication confirmed absolutely.

LAMORELLE, P. J., did not sit.