## Roch's Estate

The facts appear from the adjudication of

SINKLER, J., Auditing Judge.—Annie Murphy Roch died December 3, 1930, without husband or issue, leaving a will, duly probated, whereby she gave all her estate to her nephew, John James Cassidy, absolutely.

Letters testamentary were granted to John James Cassidy, the executor named in the will, on December 11, 1930, and proof of advertisement of notice thereof was submitted to me and is hereto annexed.

Payment of transfer inheritance tax of $259.92 on a net real and personal estate of $2736.02 on December 19, 1930, was duly vouched, as was also a payment of $50.74 on a net personal estate of $507.44 on March 30, 1931.

At the audit of the executor's account counsel for the claimant said:

"This is the claim of Lena Palladina for domestic service rendered for nine years for which she was to be compensated by a will.

"The Court: You claim there was an oral contract to make a will?

"Mr. Bauer: Yes, sir."

The brief sur claim of Lena Palladina opens thus:

"This claimant contends that she is entitled to all of the decedent's personal estate under an oral agreement by decedent to make a will in her favor, compensating her for domestic services rendered to decedent and her husband for more than nine years prior to decedent's death. In other words, claimant's services were performed and were to be paid by the will of testatrix."

Testimony in support of the claim and against it was taken before me on November 4 and 5, 1931. Thereafter oral argument was heard and briefs filed.

The testatrix and her husband, who predeceased her by six weeks, lived for about ten years at No. 1918 South Eleventh Street, Philadelphia, and for the preceding fifteen years nearby, at No. 1123 McKean Street, Philadelphia. During the last few years of his life the husband remained in his home because of an injury to his hand, did the cooking and cared for his wife. They lived a secluded life and were visited by a few neighbors who were of Italian birth or origin. Lena Palladina, the claimant, lived for a time in a house opposite the decedent and some years before her death was engaged by the decedent to do her washing under a promise to pay by decedent "like I pay the laundry." There is evidence to show that claimant did do the washing and perhaps perform other services for decedent at times preceding her death.

The decedent died December 3, 1930, having made her will on November 5, 1930, whereby she bequeathed to her nephew all her estate and appointed him sole executor. Howard M. Roch, her husband, died intestate October 27, 1930. By an adjudication upon the account of his administrator filed by me October 26, 1931, the balance for distribution is awarded to Annie Murphy Roch on account of her $5000 allowance, payment to be made to the executor of her estate.

In support of the claim of Lena Palladina, six witnesses were called. The testimony of four of these is of no importance as to the alleged oral agreement. Of the remaining two, one, Millie De Mayo, testified that decedent had once said to her, "we will keep our agreement with Lena," but did not know what promise they made to her. Decedent never said anything to her about making a will. This witness is a godmother of the claimant.

Clementine Prete, a sister of the claimant, testified as to a conversation with the decedent and claimant in December, 1925. Claimant related an argument she had had with her husband about a charge he had made that her child had died because of her neglecting the child to take care of the decedent. The following conversation ensued:

"A. She said, 'Now, Lena, you know I have made a contract with you, that whatever I have will go to you after I am gone, Mr. Roch and I.' Mr. Roch said, 'Yes. Now, Lena, we will never forget you for what you did for us.' She said, 'Lena, we will never forget you, how you did for me and Mr. Roch.' Q. What did she say she meant by that? A. She said, 'What little we have we will give to you after we are gone. Just now we cannot do it, because we don't know how we will stand.' I think, I am not sure, Mr. Roch had some kind of a pension. I would not say for sure."

"A. She said, 'You need not worry. You will get everything.' Q. 'You need not worry. You will get everything? A. Yes. Q. Did you ever have any other conversation with Mrs. Roch with respect to pay that was otherwise coming to Mrs. Palladina after this occasion? Did you ever have a conversation with her again about that subject? A. After that, every time I went over, she was always saying, 'I will leave everything to Lena. I could never repay her.' Everything was Lena's. She never trusted anyone but my sister Lena. The whole neighborhood knew that. Q. Did Mrs. Roch say she was going to make

a will in favor of Lena? A. No, she never said about a will. She said, 'I have made a contract.' Q. Made a contract? A. Yes."

Millie De Mayo, Anna Marguerita and Clementine Prete testified that they had seen claimant at work in decedent's home.

Witnesses for the claimant have also testified that the testatrix handed to the claimant her bank books, deeds to her real estate and other papers. Counsel for the claimant does not point out to the court what conclusions are to be drawn from this act, but, as will be shown in examining the testimony for the accountant, this testimony is contradicted.

Against the claim seven witnesses were called. Of these, four are of one family, the mother, Concetta Baldino, and three daughters, Ray, Suzie and Mary Baldino. This family lived in the house adjoining that of the decedent. The substance of their testimony is that the claimant told them that she had been paid for her work; that she intended to force the decedent to make a will in her favor; two of them, that the claimant had attempted to bribe them to gain their assistance in her efforts. Alice Malandrucollo testified that she had done house work for the decedent for a number of years up to the time of her death. Annie Brown, a first cousin of the decedent, denies certain testimony given by the claimant's witnesses to the effect that the decedent shortly before her death had handed to claimant bank books and deeds. Catharine Nace, a neighbor of the decedent, likewise denies this testimony.

Some of these witnesses likewise testified that the decedent's house was in a filthy condition and evil-smelling. This evidence is introduced presumably to establish that the claimant did not perform her part of the contract.

Counsel for the accountant, in opposition to the claim of Lena Palladina, has set forth in his brief a number of decisions of this state bearing upon the subject before the court. Reference is made to Craig's Estate, 298 Pa. 235; Davies's Estate, 289 Pa. 579; Schleich's Estate, 286 Pa. 578; Witten v. Stout, 284 Pa. 410; Breniman v. Breniman, 281 Pa. 304. Since the auditing judge is clear in his conclusion that the evidence in support of the claim in the present case is not sufficient to justify its allowance, he does not find it necessary to review at length these or the other cases in the brief for the accountant. The law as set forth in these cases may be summarized thus: To establish such a claim as the present requires proof direct and positive. A promise to make a will is not sufficient; it must also appear that the testator expressly agreed not to revoke the will or that the character of the transaction was such that an agreement to that effect must necessarily be implied therefrom. The better authority in this state is to the effect that if a claimant fails to establish an express contract he cannot then recover on a quantum meruit. The law on this subject is stated in Witten v. Stout, supra, thus:

"Where one claims on an express contract to pay a fixed compensation, he cannot, on failure to prove the contract, entitle himself to recover by proving simply the value of services rendered, without showing an actual promise to pay.".

Applying these principles of law to the present case and weighing all the evidence in the case, the proof of an oral agreement to make a will in favor of the claimant is insufficient. The only evidence tending to show the existence of an oral contract is that of the claimant's sister, Clementine Prete. The manner and bearing of this witness did not convince me that she testified exactly in accordance with the facts. The time when her conversation with the testatrix took place can be fixed with unusual exactitude. It was a short time after the death of the claimant's daughter, which the death certificate produced in evidence shows to have been December 12, 1925. Therefore, the conversation took place

nearly six years before the testimony was given. It is extremely improbable that after a lapse of so many years the witness could have remembered the apt phraseology, "Now, Lena, you know I have made a contract with you that whatever I have will go to you after I am gone, Mr. Roch and I." The other terms used by the witness in all probability do give the gist of the conversation, that is, general terms, that they would never forget what the claimant had done and that she would be taken care of in their will. But even if the testimony of this witness were uncontradicted in every detail, it is doubtful if we could find that there would be sufficient to establish a contract. She did not testify as to a promise made in her presence. Her testimony relates to a statement alleged to have been made by the testatrix that a contract had been made. Nor is there evidence, as required, of a promise not to revoke. Nor, according to the testimony, even if uncontradicted, are the terms of the agreement sufficiently definite and certain.

While the claimant denies the admissions attributed to her by witnesses for the accountant, there exist, nevertheless, many contradictions in the testimony which render unreliable that produced in behalf of the claimant.

The claim of Lena Palladina is, therefore, dismissed.

*Frederick W. Bauer* and *Martin G. Stein,* for exceptant.

*Thomas J. Lanshe,* contra.

STEARNE, J., April 1, 1932.—Lena Palladina, a neighbor of decedent, claims the entire estate upon an alleged parol agreement whereunder decedent was to will claimant her estate as compensation for domestic services alleged to have been rendered decedent by claimant extending over a period of nine years preceding the death.

Judge Gest has, in Ardisson's Estate, 28 Dist. R. 999, encompassed the inquiry herein presented. He writes, page 1000:

"A contract to bequeath a legacy or the residuary estate in whole or in part of the promisor in consideration of services to be rendered to him in his lifetime by the promisee is undoubtedly valid in Pennsylvania and will be enforced, but there are many reasons why the evidence of such a contract should be clear and convincing, especially if it lie in parol. All claims for services against a decedent's estate are, indeed, carefully scrutinized by this court, but where the practical effect of the alleged contract is to deprive a man of his statutory right to dispose of his property by will, or of his right to revoke a will that he may have made, it is manifestly proper, and, indeed, imperative, that the terms of the contract shall be proved by the clearest testimony."

Our reading of the evidence discloses proof which, even if accepted as true, is far from clear and convincing. But, irrespective of our views, the auditing judge in his adjudication discredits the testimony of claimant's witnesses. He finds, in effect, that there was no contract entered into. This finding, equivalent to the verdict of a jury, will not be overthrown except for manifest error: Royer's Estate, 217 Pa. 626; McCahan's Estate, 221 Pa. 186.

Assuming that the claimant has failed to establish the existence of a contract, may her proofs, nevertheless, be considered in fixing compensation upon a quantum meruit? It is the general rule, based upon sound reason and logic, that one who alleges a contract and fails in his proofs may not thereafter rely upon a quantum meruit: Witten *v.* Stout, 284 Pa. 410. However, there appears to be an exception where there is a claim for services against a decedent's estate and there is an allegation of contract, and no contract can be proven, or should any such contract be incapable of performance, and services are rendered, such

allegations of contract may, nevertheless, rebut the presumption of payment and justify a recovery upon a quantum meruit: Ardisson's Estate, 28 Dist. R. 999; Kauss v. Rohner, 172 Pa. 481; Harper's Estate, 196 Pa. 137; Goehring's Estate, 70 Pa. Superior Ct. 340.

However, the same degree and burden of proof is upon a claimant against a decedent's estate as exists against a living party: Wears's Estate, 25 Dist. R. 30; Shellenberger's Estate, 27 Dist. R. 374; Gilbraith's Estate, 270 Pa. 288; Hirst's Estate, 274 Pa. 286.

To recover under a quantum meruit the burden is upon the claimant to prove precisely what services were rendered, the duration, the character and quality thereof, and to establish their value. The only proof of services was given by a sister and a godmother of claimant. Both witnesses interested in claimant were disbelieved by the auditing judge. But for the purpose of this particular inquiry, taking their testimony as true, their evidence of the character and extent of the services was at best most vague, indefinite and uncertain. It was far from clear and convincing as to exactly what services were rendered and for what periods. Furthermore, the only proof of value was the testimony of one of them, who said that she paid her own maid three dollars a day and carfare for the work which the maid performed for the witness.

Upon a careful review of all the evidence, we are of opinion that the auditing judge was fully justified in rejecting the claim as not proven.

The exceptions are dismissed and the adjudication is confirmed absolutely.