## Schoenbachler's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.
The facts appear from the following extract from the adjudication of

HENDERSON, J., Auditing Judge.—The decedent, who was unmarried at the time of his death, died on July 19, 1931, intestate, leaving, as appears by the petition for distribution hereto attached, as the persons entitled to his estate under the intestate laws, three minor grandchildren, George Dark Schoenbachler, Ida Amelia Schoenbachler and Arnold Schoenbachler, for whose estates Bucks County Trust Company is guardian by decree of the Orphans' Court of Bucks County dated September 21, 1931. . . .

Claim was presented on behalf of Josephine Fuchs in the sum of $6090 arising under the following circumstances: It was alleged the claimant and the decedent, in his lifetime, entered into a contract whereby, in consideration of the services of the claimant as housekeeper, decedent agreed to leave her by will the home No. 2532 Firth Street, together with a sum sufficient to maintain the same. Claimant performed her services from November 5, 1919, to the time of decedent's death. Decedent left no will, hence the claim is on a quantum meruit for services rendered. The amount claimed is based on a weekly salary or wage of $10, extending over the period from November 5, 1919, to the date of decedent's death on July 19, 1931.

Mary Alteneder, a witness called on behalf of claimant, testified the claimant had worked for her as maid from the year 1900 until she was persuaded and coaxed to leave her by the decedent to go with him as housekeeper, which she did on November 5, 1919. She further testified: ". . . He coaxed her for nearly a year to leave me as housekeeper to keep house for him; he was not to give her any wages; it was to be her home as long as she lived and that the house would be hers and he would make a will to that effect and also leave enough money to keep the house."

Caroline Walter, a niece of decedent, testified that the decedent lived with her, the witness, and her mother during the period of the war, and the decedent told her of his intention to employ the claimant to keep house for him; and that on several occasions the decedent called to visit her, the witness, and when asked what he intended to pay the claimant for her services, he replied: "I am going to give her no pay at all but I am going to agree by my will that she is to have the

home with all expenses paid as long as she lives, and then," he said, "it will go to whom it belongs after her decease." The witness further testified that the claimant herself, in the presence of the decedent, testified that the decedent said: ". . . Your uncle [decedent] has agreed to give me this house in his will with all expenses paid as long as I live, and, of course, at my decease it will go to the rightful heirs." To this statement the decedent assented.

It was shown that the claimant performed the services of housekeeper, indeed was the only person in this house other than the decedent, and in fact did everything in the household—cooked, made beds, swept and cleaned the house, the windows, stairs and door, attended the heater, carried up coal, did the marketing and paid the bills.

The claimant quit her employment of nearly twenty years' standing and went to live with the decedent upon the promise as above recited; but I am asked to find that she gave up a weekly wage to keep house for the claimant at no wages at all because he was a cousin. I am unwilling to make any such finding.

The compensation agreed upon was not due until the decedent's death, hence the presumption of weekly payments does not arise nor is the statute a bar. See Conkle v. Byers's Exec'r, 282 Pa. 375, 377.

The value of the services at $10 per week was properly proven by competent testimony.

No evidence was presented against the claim, and I am of the opinion that it has been properly proven and is allowed.

*George J. Edwards, Jr.*, for exceptant.

*William J. Ramage* and *Joseph K. Coxe*, contra.

VAN DUSEN, J., October 28, 1932.—The auditing judge found in substance the existence of a contract by decedent to give by will to the claimant his house for life "with all expenses paid" in consideration of services as housekeeper, and also that the services were performed until his death. He left no will.

While the evidence of performance came from witnesses who did not have a knowledge of it from day to day, nevertheless, such evidence was not contradicted, although if the fact was not so, contrary evidence could have been obtained from friends and neighbors. The promise was indefinite and the two witnesses did not agree as to its terms. It is probably incapable of liquidation as to the "expenses" and the term of service was not definite. As the claim is not for the value of the thing promised, but on a quantum meruit, the indefiniteness is immaterial. The evidence that there was some promise is clear and convincing. Such evidence rebuts the presumption that the family services of a cousin are rendered without expectation of pay, the presumption of periodical payment and the bar of the statute of limitations: Conkle v. Byers's Exec'r, 282 Pa. 375, 377; Kauss v. Rohrner, Admin'r, 172 Pa. 481.

It is well settled that where services such as these are performed under a promise to pay, recovery may be had on a quantum meruit, though the thing promised could not be recovered because of indefiniteness or the statute of frauds or the Wills Act. See cases supra: Hertzog v. Hertzog's Admin'r, 34 Pa. 418; Breniman v. Breniman et al., Exec'rs, 281 Pa. 304; Roch's Estate, 16 D. & C. 700.

Cases cited in the earnest argument for the exceptants (who are minors) should be noticed. In Walls's Appeal, 111 Pa. 460, the claim was distinctly not on a quantum meruit, but for damages for not giving the thing promised, so that indefiniteness was fatal. In Cummiskey's Estate, 224 Pa. 509, the promise was: "I will give it [the place she lived on] to Mrs. McEvoy for what she has done for me, and that will hardly pay her." This showed no contract—only an

intention to pay—"nothing beyond a grateful appreciation of kindness." In Winfield *v.* Beaver Trust Co., 229 Pa. 530, the statement was "that he would pay him for his services, or would see that he was well paid." As the reliance on Cummiskey's Estate in the opinion shows, this, too, was regarded only as a declaration of intention, not a promise on the faith of which the services were performed. In Gilbraith's Estate, 270 Pa. 288, "I will pay her for her trouble . . . she will be well paid," and the like, which expressions were given the same interpretation. In Calvert *v.* Eberly, Admin'r, 302 Pa. 152, the language was, "If I die first she will be provided for," which is of the same character; "her and I have a contract," but a contract for what did not appear. And there decedent also said: "I am not paying her housekeeping wages, but this is her home. I am allowing her to keep two roomers and boarders. I am paying my own board to her."

In the present case, the promise of compensation was made to induce the claimant to begin her services and on the faith of it the services were performed.

The exceptions are dismissed and the adjudication is confirmed absolutely.